JAMES J. OWENS, Adm'r of the Estate of Rickie L. Owens, Deceased, Plaintiff-Appellant, v. CONSOLIDATION COAL COMPANY, Defendant-Appellee (Bollmeier Construction Company, Third-Party Defendant-Appellee).

Fifth District   No. 5—85—0299

Opinion filed June 12, 1986.

Gerald D. Owens, of Benton, for appellant.

Edward J. Kionka and G. Patrick Murphy, both of Winters & Garrison, of Marion, for appellee Consolidation Coal Company. .

Charles E. Schmidt, of Mitchell, Brandon & Schmidt, of Carbondale, for appellee Bollmeier Construction Company.

JUSTICE JONES delivered the opinion of the court:

Plaintiff, administrator of the estate of decedent, Rickie L. Owens, appeals from the entry of summary judgment in favor of defendant, Consolidation Coal Company (Consolidation), and third-party defendant, Bollmeier Construction Company (Bollmeier) in this action to recover damages for wrongful death (see Ill. Rev. Stat. 1983, ch. 70, pars. 1, 2) and for personal injuries under the Survival Act (see Ill. Rev. Stat. 1983, ch. 110½, par. 27—6). The decedent died as a result of a drug and alcohol overdose in June 1982 following his work-related injury in October 1981, and the plaintiff sought recovery

from the defendants on the ground that the drugs ingested by the decedent had been prescribed as treatment for the decedent's injury. In entering summary judgment for the defendants, the trial court found that the plaintiff's survival action was barred by the statute of limitations and, further, that there was "no causal connection between the decedent's death and the original employment related injury." On appeal the plaintiff contends that since there was a legal presumption against suicide, a factual question remained as to whether or not the decedent's death resulted from suicide, and the trial court thus erred in entering summary judgment for the defendants. We affirm.

Decedent, Rickie Owens, was employed by Bollmeier on a construction project for Consolidation when he sustained a soft tissue back injury on October 31, 1981. Owens was hospitalized for 21 days and, upon his release, was given a prescription for Darvon, to be taken as needed for pain, and Tranxene, a tranquilizer, to be taken as needed for nervousness. Dr. A. Sethakorn, Owens' physician, continued to see him for follow-up visits from December 2, 1981, to January 4, 1982. After this time Dr. Sethakorn renewed the decedent's prescriptions for Darvon and Tranxene. The last time Dr. Sethakorn renewed the prescriptions was March 3, 1982, when he gave the decedent a nonrenewable prescription for 30 capsules of Darvon and a nonrenewable prescription for 20 capsules of Tranxene. The maximum prescribed dosage of Darvon was one capsule every four hours, and the Tranxene was to be taken one capsule at a time as needed. Dr. Sethakorn instructed the decedent not to use these drugs with alcohol.

In an evidence deposition taken by the plaintiff's attorney, Dr. Sethakorn testified that it was his opinion that the decedent would have been able to return to work by late January or early February 1982. However, the decedent did not go back to work.

On June 21, 1982, the decedent was found dead in his home, with an empty Darvon container on the floor and an empty Tranxene container in the sink. Dr. M. A. Gabrawy, a pathologist, performed an autopsy to determine the cause of death. In an evidence deposition taken by the plaintiff's attorney, Dr. Gabrawy testified that the decedent's blood contained .187% alcohol and that, since the autopsy was performed several hours after death, the blood alcohol level would have been much higher at the time of death. Dr. Gabrawy stated that the threshold toxic level of alcohol was .15%. Dr. Gabrawy also found a quantity of Darvon that was at least nine times the normal therapeutic level, as well as a normal dosage amount of Tranxene. Dr. Gabrawy stated that the decedent's death was caused by a drug and al-

cohol overdose and that, given the circumstances surrounding the death, it was likely that the decedent had committed suicide.

On February 24, 1984, one year and eight months after Owens' death and over two years and three months after his injury, the plaintiff filed this action alleging a violation of the Structural Work Act (Ill. Rev. Stat. 1983, ch. 48, par. 60 *et seq.*). Count I of the plaintiff's complaint was for damages under the Wrongful Death Act, count II was for damages under the Survival Act, and count III sought recovery of hospital, medical, nursing and funeral expenses under both Acts. Consolidation filed a request to admit certain facts, including (1) that Rickie Owens died as a result of drug and alcohol overdose and (2) that all of the substances found in his system were "self-induced by [the decedent]." This request was never answered, and these facts were thus admitted. See 87 Ill. 2d R. 216(c).

The defendants filed motions for summary judgment on the grounds (1) that the statute of limitations had expired on the survival claims of counts II and III and (2) that, as to the wrongful death claims of counts I and III, there was no causal connection between the back injury on October 31, 1981, and the decedent's death from a drug and alcohol overdose some eight months later. Both the depositions of Dr. Sethakorn and Dr. Gabrawy were made a part of the record. Bollmeier filed a supplemental motion referring to the deposition testimony of Dr. Gabrawy that, in his opinion, the decedent had committed suicide. Consolidation, in its motion for summary judgment, stated that there was no factual causal connection between the decedent's work-related injury and his subsequent death, that the decedent died of a self-induced drug and alcohol overdose, and that whether the decedent's death was suicidal or accidental was immaterial. The plaintiff responded to the motions for summary judgment, attaching an affidavit of the decedent's father which stated (1) that the affiant lived in the same community as the decedent and saw him daily and (2) that, at the time of his death, Rickie Owens was still experiencing pain on a daily basis "requiring medication which had been prescribed by his doctors."

After hearing on the defendants' motions, the trial court entered summary judgment for the defendants. As to the wrongful death claims of counts I and III, the court observed that there was "no dispute as to the cause of the decedent's death. .The decedent *** died *** as a result of an overdose of alcohol, caffeine, tranxene, and propoxyphene [contained in Darvon]." The court found, therefore, that there was "no causal connection between the decedent's death and the original employment related injury of October 31, 1981." The

court additionally found that the survival claims of counts II and III were barred by the statute of limitations since they were not brought within two years of the date of injury or within one year of the date of death. The court ruled, therefore, that there was no genuine issue of fact warranting trial so that summary judgment should be granted.

On appeal from this judgment, the plaintiff does not address the statute of limitations issue, and we accordingly affirm the trial court's dismissal of the survival claims of counts II and III without discussion. The plaintiff contends, however, that the trial court erred in entering summary judgment on the wrongful death claims of counts I and III because a genuine issue of fact remained as to whether the decedent had committed suicide. The plaintiff asserts that since there was a legal presumption against death by suicide, the defendants' allegations by motion that the decedent's death resulted from suicide raised an issue of fact to be resolved by the trier of fact.

The defendants counter that whether or not the decedent's death resulted from suicide, there was no basis in the record for the trier of fact to find a causal connection between the decedent's work-related injury and his death so that the grant of summary judgment was proper. We agree. It was undisputed that the decedent died from a drug and alcohol overdose and that this overdose was self-induced, whether intentionally or accidentally. In order to withstand a motion for summary judgment, the plaintiff was obligated to set forth some causal link between the decedent's injury and his subsequent death that would arguably entitle the plaintiff to a judgment. (See *Gehrman v. Zajac* (1975), 34 Ill. App. 3d 164, 340 N.E.2d 184.) The plaintiff was not relieved of this obligation by any presumption against suicide, if, indeed, such a presumption were applicable in the instant case. *Cf.* E. Cleary & M. Graham, *Handbook of Illinois Evidence* sec. 302.6, at 87 (4th ed. 1984) (presumption against suicide applicable in life insurance cases involving policies covering accidental death).

The only connection here alleged between the decedent's injury and his subsequent death was that his death resulted in part from drugs that had originally been prescribed for his injury. The deposition testimony contained in the record, however, showed that the decedent had ingested these drugs in an amount far in excess of the prescribed dosage and had combined them with alcohol, as he had been specifically instructed not to do. The record showed, moreover, that the decedent had recovered from his injury so that he could have returned to work in late January or early February 1982, almost five months before his death. For these reasons, any alleged connection between the decedent's injury and his subsequent death had been severed. In

response to the defendants' motions for summary judgment based upon these facts, the plaintiff offered only the affidavit of the decedent's father, stating that at the time of his death the decedent still experienced pain requiring medication that had been prescribed by his doctor. This assertion, however, failed to raise any triable issue of fact in view of the record showing that the decedent had taken the medication contrary to his doctor's instructions and had been medically able to return to work several months before his death. It should be noted that if the decedent had taken the Darvon capsules in the manner prescribed for continuing pain, his last prescription given March 3, 1982, for 30 capsules would have been gone long before his death from a self-induced overdose on June 21, 1982.

In the absence of any specific facts or reasonable inferences from the record rising a triable issue of fact, the trial court properly granted the defendants' motion for summary judgment (cf. Gehrman v. Zajac (1975), 34 Ill. App. 3d 164, 340 N.E.2d 184) (trial court need not strain to adduce some remote factual possibility to defeat motion for summary judgment), and we accordingly affirm that court's judgment for the defendants.

Affirmed.

KARNS, J., concurs.

JUSTICE HARRISON, dissenting.

I respectfully dissent.

I believe reasonable inferences remain which show a connection between decedent's original injury and his subsequent death. This case is very similar to Bak v. Burlington Northern, Inc. (1981), 93 Ill. App. 3d 269, 417 N.E.2d 148, where a woman died of an overdose of Darvon nine months after she slipped and fell on stairs in the railroad station owned by the defendant. A coroner's inquest had concluded death was by suicide. The executor disagreed, testifying that suicide would have been against the decedent's religion and that she was in such severe pain there were times she did not know how much medication she was taking. The executor also stated decedent had told him the night before she died that she was feeling "a little better," and did not appear to be upset. The trial court granted summary judgment for the defendant on the theory that whether decedent died as a result of suicide or from a negligently self-administered overdose, either was an independent intervening cause and not a foreseeable result of her fall. The appellate court held that summary judgment

was improper because significant questions of fact remained: "Here a material question of fact is raised as to whether the overdose was a negligent act of decedent, a nonnegligent accidental overdose, or a voluntary suicide. Another question for the fact-finder is the ultimate one of whether defendant's alleged primary negligent act was the proximate cause of decedent's death." (93 Ill. App. 3d 269, 272, 417 N.E.2d 148, 150.) In the present case as well, the question remains whether the overdose was a negligent act of decedent, a nonnegligent accidental overdose, or a suicide. There also exists the ultimate question of whether defendants' alleged primary conduct was the proximate cause of decedent's death.

The majority states that any connection between the initial injury and the death has been severed for two reasons: because decedent took an overdose of drugs and combined the drugs with alcohol, and because decedent had recovered from his injury five months before his death. Regarding the first reason, there still exists a genuine issue of fact as to what caused decedent to take an overdose. Defendants presented the evidence of Dr. Gabrawy who stated there was a likelihood decedent took the overdose in order to take his own life. There was also circumstantial evidence of suicide in that death was by an overdose. But this evidence was not conclusive enough to eliminate other explanations for the overdose. However, even if Dr. Gabrawy had been certain decedent committed suicide, suicide is not always considered an independent agency which breaks the causal chain between the original injury caused by a defendant and the subsequent death of the injured person. If a plaintiff is suffering from a mental condition which prevents him from realizing the nature of his act or controlling his conduct, the defendant will be liable for the suicide if the original injury caused the mental condition. (*Repinski v. Jubilee Oil Co.* (1980), 85 Ill. App. 3d 15, 25-26, 405 N.E.2d 1383, 1391.) The fact that eight months passed between the original injury and the death here does not rule out any connection between the original injury and the subsequent death of decedent. (See *Repinski v. Jubilee Oil Co.* (1980), 85 Ill. App. 3d 15, 26, 405 N.E.2d 1383, 1391 (time lapse of three months did not rule out connection with attempted suicide).) Defendants have failed to eliminate the reasonable inference that decedent's original injury might have caused a mental condition which prevented him from realizing the nature of his act or controlling his conduct.

Defendants also have failed to eliminate the reasonable inference that the overdose was accidental or the result of decedent's negligence. The majority notes that decedent took an overdose of prescrip-

tion drugs and also drank alcohol. The intervention of an independent intervening cause does not necessarily relieve one of responsibility for a negligent act when the intervening cause of injury is of such nature as could reasonably have been anticipated. (*Neering v. Illinois Central R. R. Co.* (1943), 383 Ill. 366, 381, 50 N.E.2d 497.) It has been generally held that the negligent treatment by a physician is reasonably foreseeable, and the original tortfeasor is liable for aggravation of the original injury caused by the negligent treatment. (*Gertz v. Campbell* (1973), 55 Ill. 2d 84, 88, 302 N.E.2d 40, 43.) I would submit it is at least as foreseeable that an injured person would take an overdose as it is a physician would prescribe an overdose.

The majority's other reason for finding a lack of causal connection is also unfounded. The majority states that the record shows decedent had recovered from his injuries so that he could have returned to work almost five months before his death. The record does show Dr. Sethakorn stated he would have allowed decedent to return to work, but not that decedent had fully recovered or had no more pain. Dr. Sethakorn continued prescribing pain medication for decedent until as late as March 3, 1982, several weeks after he would have allowed decedent to return to work. Furthermore, decedent's father stated in an affidavit that his son was experiencing pain on a daily basis up until the time of his death. The majority notes that if decedent had been in continuing pain he would have depleted his last supply of Darvon long before his death. However, the doctor's directions called for decedent to take the medication on an as needed basis. It is reasonable to believe that some days he experienced pain but not to the extent of needing medication, while on other days the pain was more severe. Even the majority's view of the facts would not preclude a finding that defendants were liable for decedent's death. In *Stephenson v. Air Products & Chemicals, Inc.* (1969), 114 Ill. App. 2d 124, 134, 252 N.E.2d 366, 371, this court rejected the argument that an original tortfeasor's liability for subsequent injuries is limited to cases where the second injury was suffered within the period of convalescence from the original injury. We held there that "the test is whether there is a sufficient causal relationship and we are not persuaded that recovery should be limited to occurrences within the period of convalescence." 114 Ill. App. 2d 124, 134, 252 N.E.2d 366, 371.

Having found defendants have failed to eliminate all genuine issues of material fact, I would reverse the summary judgment entered on behalf of defendants and remand for further proceedings.