Robert Stephenson, Plaintiff-Appellee, v. Air Products and Chemicals, Inc., Defendant-Appellant.

Gen. No. 68–94.

Fifth District.

October 10, 1969.

Chapman, Strawn & Kinder, of Granite City, for appellant.

Carr, Raffaelle & Cook, of East St. Louis (Rex Carr, of counsel), for appellee.

GOLDENHERSH, P. J.

Defendant appeals from the judgment of the Circuit Court of Madison County entered upon a jury verdict in the amount of $300,000.

In the first trial of this case, the jury returned a verdict in favor of plaintiff, the circuit court ordered a new trial on the issue of damages only, and this court denied plaintiff's petition for leave to appeal.

The injuries of which plaintiff complained in the first trial were suffered on July 7, 1961. Prior to the second trial, plaintiff amended his complaint to allege that as a result of his permanent injuries he "has been caused to suffer additional injuries. . . ." Defendant filed a motion stating that upon taking plaintiff's deposition it learned of a fall allegedly suffered on June 24, 1966, and plaintiff was contending the fall occurred because of the condition of his leg as the result of the injuries sustained in July 1961. In compliance with an order entered by the circuit court, and to meet issues raised in de-

fendant's motion to strike or make more definite and certain, plaintiff amended his complaint to allege that as a direct and proximate result of the injuries previously suffered "and inherently related to these same injuries, plaintiff was caused to fall on the 24th day of June, 1966, at Irving School in St. Louis, Missouri, while he was in the exercise of ordinary care for his safety and without the intervention of any intervening cause or condition, plaintiff did sustain severe and additional injuries to his head, body and right foot, including a fracture thereof, which said injuries are permanent and permanently disabling."

Plaintiff testified that he is 41 years of age, has a tenth grade education; prior to July 7, 1961, his health was good; he has been employed as a painter for 15 years; in July of 1961, a flagpole fell while he was painting it and he fell 20 to 25 feet to the rooftop on which it was mounted; he was treated by various physicians; he returned to work in 1963; he could not do the required lifting and his fellow workers helped him; his leg "folded up" on him on many occasions; he described falls while working in 1963 and 1964, and on other occasions when he was not working. In June 1966, while painting in a school his left leg "folded up" and he fell off a pick and broke his foot. A pick is a walk board that is placed on two ladders.

Louis Mifflin testified that he is a painter, had known plaintiff 10 or 15 years, was working with plaintiff on July 7, 1961, when a flagpole at defendant's premises gave way while plaintiff was working near its top; he worked with plaintiff on various jobs; prior to July 7, 1961, plaintiff had performed his work well, but on jobs between 1963 and 1966, plaintiff "performed his work very poorly" and needed help in carrying paints and ladders; plaintiff sustained several falls; he was working with him on June 24, 1966, when plaintiff started to

make a step, "his leg collapsed" and he fell 8 feet off a pick.

Donald Cook, a painter, testified that he had worked with plaintiff at various jobs since April 1963, plaintiff fell on a job in "the middle of 1965" and said "his leg gave way on him"; he described falls suffered by plaintiff later in 1965 and May 1966.

Raymond Reed, a painter, had worked with plaintiff on various jobs since April 1963; on a job in September, 1964, plaintiff's leg gave way and he fell, he was laid off the job several times and Reed, as shop steward, intervened to get him back on; plaintiff needed help to lift things on the job; he fell on another occasion.

Dr. Bart Cole, an orthopedic surgeon, testified that he was called by Dr. Bowers to see plaintiff, who was then confined to St. Elizabeth's Hospital in Granite City. Plaintiff stated he had suffered a fall, prior to which he was in good health. He complained of pain in his neck, back and shoulders. The doctor identified X rays which he stated revealed loss of normal cervical lordosis and scoliosis. He made a diagnosis of cervical radiculitis and a lumbosacral joint derangement. Plaintiff was seen by Dr. Cole three times in 1961, seven times in 1962, in April 1963 and June 1964. He continued to have trouble with his neck, shoulder and back. There was a limitation of motion in lateral bending and a loss of left ankle reflex.

Dr. Cole saw plaintiff in 1966 at St. Mary's Hospital in East St. Louis. He gave a history of an injury several days earlier when his leg "gave way" and he fell. X rays revealed a compression type fracture of the right heel bone. X rays taken in January 1967 showed the loss of cervical lordosis and scoliosis as observed earlier, but with some improvement.

Examination in January 1967 showed a loss of motion in the right foot and an X ray in June 1967 showed subtaler arthritis.

Dr. Cole expressed the opinion that the condition found in plaintiff's neck and lower back might or could result from the fall on July 7, 1961, and was permanent. In answer to a hypothetical question he expressed the opinion that there might or could be a causal connection between the injuries suffered on July 7, 1961, and the fall on June 24, 1966. He stated that in his opinion the condition found in plaintiff's foot was permanent, and plaintiff was unable to carry heavy objects, climb, or walk on uneven surfaces.

Dr. John McMahan, a psychiatrist testified that he first saw plaintiff on September 17, 1962. He enumerated plaintiff's complaints, reviewed the history given him and stated he had made a diagnosis of psychophysiological musculoskeletal disorder. He prescribed tranquilizers, and because plaintiff's condition did not improve, he was hospitalized on October 19, 1962. He was given electric shock treatments, and discharged on November 2. In his opinion the disorder described was "connected with" the fall on July 7, 1961. He last saw plaintiff on April 30, 1963, at which time he stated he had gone back to work and "was getting along fairly well."

Dr. John W. Deyton, a specialist in physical medicine and rehabilitation, saw plaintiff for the first time on January 18, 1967. Plaintiff related a history of a fall while painting a flagpole in 1961, was hospitalized, and as the result of his injuries did not work again until April or May of 1963. He told him of a fall on June 24, 1966; he complained of headaches, pains in the shoulders and neck, pain in his arms, loss of grip, pain in the leg, nervousness, and inability to sleep. He wore orthopedic shoes and there was minimal weight bearing on the right foot.

Dr. Deyton testified that upon examination he found restriction in the range of motion of the neck, restriction of motion in the shoulders, limitation of motion of the back, evidence of a fracture of the right heel and ankle,

131

tenderness of the back on palpation, and atrophy of the right leg. He expressed the opinion that plaintiff could not perform work which required bending or lifting, looking up, shoulder flexion or back extension. He found arthritis in the ankle and evidence of pain which would persist until fusion, either surgical or natural, was effected of the heel bone and "second" bone. He believed plaintiff's condition to be permanent.

Dr. W. W. Bowers, called by defendant, testified that he saw plaintiff in his office on July 7, 1961. He was sent home, called later complaining of pain and was sent to the hospital. He developed a paralysis of the bowel which cleared up but he continued to complain of pain in the left shoulder, numbness of the left hand, pain in the chest and left side of the abdomen. All of the symptoms could result from a severe blow to the area affected.

Dr. Lee T. Ford, an orthopedic surgeon, called by defendant, did not examine plaintiff but testified from X rays.

Dr. Norman Shippey, a radiologist, called by defendant, identified and testified with respect to a number of X rays.

Defendant contends that the trial court erred in admitting evidence of plaintiff's fall on June 24, 1966, and testimony with respect to the injuries suffered at that time. It argues that the injury of June 24, 1966, is not the natural or probable result of defendant's negligence and it cannot be held liable therefor.

Plaintiff contends that whether the second injury proximately resulted from the injury suffered on July 7, 1961, is a question of fact for the jury.

The abstract proposition of law presented is stated in Restatement of Torts (2nd):

"§ 460. Subsequent Accidents Due to Impaired Physical Condition Caused by Negligence.

"If the negligent actor is liable for an injury which impairs the physical condition of another's body, the actor is also liable for harm sustained in a subsequent accident which would not have occurred had the other's condition not been impaired, and which is a normal consequence of such impairment."

That the application of the rule to factual situations is sometimes difficult is apparent from an examination of the cases gathered and discussed at 9 ALR 255, 20 ALR 524, and 76 ALR 1285. The majority rule appears to be that whether the harm sustained in a subsequent occurrence resulted from the impairment or injury suffered in the first occurrence is a question of fact for the jury. Eli Witt Cigar & Tobacco Co. v. Matatics (Supreme Court of Florida), 55 So2d 549; Underwood v. Smith, 261 Ala 181, 73 So2d 717; Stephenson v. F. W. Woolworth Co., 277 Minn 190, 152 NW2d 138. The fact that the site of the original injury was not the same as the site of the later injury is not determinative that the cause of the original injury did not proximately produce the later injury. Brenan v. Moore-McCormack Lines, 3 App Div2d 1006, 163 NYS2d 889 (Supreme Court, NY Appellate Division, First Department) ; Creech v. Riss & Company, Inc. (Supreme Court of Missouri), 285 SW2d 554.

The rule as stated is consistent with the holding of Chicago City Ry. Co. v. Saxby, 213 Ill 274, 72 NE 755, that the question whether plaintiff's injuries were the result of defendant's negligence, or resulted from some other cause, is one of fact.

■ To sustain defendant's contention would require us to hold as a matter of law that there is no causal connection between plaintiff's second fall and the injuries which resulted therefrom. The record contains evidence that the causal relationship exists, and its sufficiency should be determined by the same standards which apply to direction of verdicts and entry of judgments n. o. v.,

Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504. Applying the test of Pedrick to the record before us, we hold that the issue was properly one for the jury.

■ Defendant argues that the evidence shows plaintiff was guilty of contributory negligence as a matter of law in working on a pick, knowing that his leg might "fold up," causing him to fall. The record shows that defendant tendered, and the court gave, instructions which defined contributory negligence and told the jury that with respect to the occurrence of June 24, 1966 plaintiff had the burden of proving that before and at the time of the occurrence he was using ordinary care for his own safety and the additional injuries suffered as the result thereof are the direct and proximate result of the injuries suffered by plaintiff on July 7, 1961, and if they found either proposition has not been proved the verdict should not include any damages for those injuries. Applying the rule of Pedrick to the record before us, the question of whether plaintiff's negligence contributed to cause his fall of June 24, 1966, was properly one for the jury.

■ Defendant concedes there is authority for the award of damages for subsequent injuries but argues that recovery has been limited to those instances in which the second injury was suffered within the period of convalescence from the original injury. Some of the cases cited appear to support its contentions, but in our opinion, there is no sound basis for so holding. The test is whether there is a sufficient causal relationship and we are not persuaded that recovery should be limited to occurrences within the period of convalescence.

Defendant states "the basic question can be simply put —where does the responsibility on this or any other defendant end?" It ends where it has always ended—when the injured person has been compensated for the damage resulting from its negligence.

134

■ Defendant contends that any cause of action from injuries resulting from the occurrence of June 24, 1966, is barred by the Statute of Limitations (c 83, § 15, Ill Rev Stats 1967). We have examined the authorities cited (Larkin v. Gerhardt, 21 Ill App2d 122, 157 NE2d 426; 171 ALR 1087) and do not find them in point. Plaintiff, in his amendment, did not allege a new cause of action— he enumerated alleged further consequences of defendant's negligence.

■ Defendant argues that the trial court ignored a pretrial order entered by another judge, and in so doing made a fact issue of a question which the judge who conducted the pretrial proceeding decided as a question of law. It concedes that a pretrial order may be amended at the trial, but argues that no amendment may be made which will result in substantial prejudice to a litigant. We have examined the pretrial order and fail to see in what manner defendant was prejudiced. The record does not bear out its contention that as the result of the trial court's failure to follow the pretrial order it was required to assume the burden of proving plaintiff was contributorily negligent and the fall of June 24, 1966 was an intervening cause which would relieve it of liability for the injuries suffered therein. The case was tried, and the jury instructed, on the theory contemplated by the pretrial order, i. e., that plaintiff, with respect to the occurrence of June 24, 1966, was required to prove that he was, at that time, in the exercise of due care, the injuries suffered at that time were the proximate result of the first injury, and did not result from an independent, intervening cause.

■ ■ Defendant contends the trial court erred in denying its motion for a continuance after it allowed plaintiff to increase his ad damnum from $200,000 to $500,000. The denial of a motion for continuance is left to the sound discretion of the trial court. The record shows that when counsel for defendant argues the rea-

son for the need for a continuance, i. e., the involvement of another liability carrier, they were misinformed as to the applicable coverage. In denying the motion, the trial court did not abuse its discretion.

Defendant moved for a directed verdict both at the close of plaintiff's case and at the close of all the evidence "as to that part . . . of the amendment to complaint which relates to the injuries allegedly sustained by plaintiff on the 24th day of June, 1966. . . ." It contends that the court erred in denying the motions.

As previously stated, applying the test of Pedrick we cannot say that the court erred in denying the motions.

Defendant contends the court erred in refusing to give its tendered instructions numbered 5, 6 and 11. Instruction number 5, not in IPI, purports to instruct on contributory negligence, already covered by defendant's instruction number 2 (IPI 10.03).

Defendant's instruction number 6 purports to be an issue instruction in the form of IPI 21.03, and states that defendant has pleaded, as an affirmative defense, that any injuries suffered in the occurrence of June 24, 1966, were not the result of the fall of July 7, 1961, but "were a direct and proximate result of an intervening cause." The instruction, as tendered, advises the jury that plaintiff has the burden of proving certain enumerated propositions but fails to instruct them that the defendant has the burden of proving its affirmative defense.

Defendant's instruction number 13 instructed the jury that plaintiff had the burden of proving that any additional injuries suffered in the occurrence of June 26, 1966, are a direct and proximate result of the injuries suffered on July 7, 1961, and if he failed so to prove the verdict should not include any damages for those injuries. The jury was adequately instructed with respect to the issue of proximate cause of the occurrence of June 24, 1966, and in view of that fact, and the defect

136

in the tendered instruction, the court did not err in its ruling.

What we have said with respect to defendant's instruction number 6 is equally applicable to its number 11, and the court did not err in refusing the instruction.

 Defendant tendered a special interrogatory in the following form "Was the plaintiff in the exercise of ordinary care for his own safety on June 24, 1966?" It has long been the rule that a special interrogatory should not be given unless the answer thereto could control the general verdict. Under the theory upon which this case was tried, no contention is made that defendant was guilty of a second tort or act of negligence. The issue with respect to the second injury is whether it was proximately caused by the first; therefore, a negative answer to the interrogatory could serve to reduce, not set aside, a verdict in favor of plaintiff, and the court correctly refused to submit it. Further, the interrogatory is improper in form in that it fails to limit the inquiry to "before and at the time of the occurrence." (See IPI 10.03.)

 During the conference on instructions, defendant tendered forms of verdict which provided for separate findings with respect to the occurrences of July 7, 1961, and June 24, 1966. The court refused to submit these verdicts to the jury. The form of verdict submitted to the jury provided only for the assessment of plaintiff's damages.

Section 65 of the Civil Practice Act (c 110, § 65, Ill Rev Stats 1967) provides "Unless the nature of the case requires otherwise, the jury shall render a general verdict." The single issue to be determined by the jury was the amount of plaintiff's damages, and there is no statutory provision for specific findings with respect to the elements of damage upon which the verdict is based. The court correctly refused to submit the tendered forms of verdict.

137

Defendant contends the verdict was grossly excessive and resulted from passion and prejudice on the part of the jury.

The testimony shows plaintiff continued to suffer pain, walks with a limp and requires the use of a cane. There is substantial evidence from which the jury could have decided that plaintiff was industrially unemployable and unable to pursue his trade of painter. He testified to a substantial loss of earnings up to the time of trial. At 41 years of age, he had lengthy life and work expectancies.

 The courts have repeatedly held that the amount of damages to be assessed is peculiarly a question of fact for the jury, and if the jury is properly instructed on the measure of damages, an appellate court should not substitute its judgment as to the sum to be awarded in a given case, for that of the jury.

 Our conclusion, following careful examination of the record, is best described in the following statement found in the opinion in Lau v. West Towns Bus Co., 16 Ill2d 442, 158 NE2d 63, at page 453:

> "We are not unmindful of our obligation to carefully scrutinize the record to determine whether the amount of the verdict is so large as to indicate passion and prejudice. This we have done, and we conclude from the evidence that although the verdict may well be in excess of the amount which the judges of this court would have allowed if they had heard the evidence and made the original determination, yet we do not believe that it is so excessive as to show passion or prejudice.
>
> "We therefore conclude that the verdict and judgment below are correct and the judgment is affirmed."

Judgment affirmed.

MORAN and EBERSPACHER, JJ., concur.