2016 IL App (2d) 150291
No. 2-15-0291
Opinion filed March 21, 2016

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| BRIAN D. McCLURE, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | No. 09-F-525 |
| | ) | |
| ALIX P. HAISHA, | ) | Honorable |
| | ) | Linda E. Davenport, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices McLaren and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1    The petitioner, Brian McClure, was successful in gaining custody of his daughter from her mother, the respondent, Alix Haisha. (The parties never married.) He then moved to terminate or modify his child support obligation. The trial court granted his motion in part, decreasing his monthly support obligation, but refused to impose any child support obligation on Alix. Brian appeals, arguing that it was improper to order him to continue paying such a high level of child support now that he has legal custody of his daughter. He also argues that Alix should have been ordered to contribute to their daughter's support. We affirm the trial court's ruling regarding Brian's child support obligation, but modify the amount of Brian's child support obligation to reflect a mandatory statutory offset of $10 per month in child support by Alix.

¶ 2                                    I. BACKGROUND

¶ 3     On July 8, 2007, the parties had a daughter, Jessica.  Brian signed a voluntary acknowledgment of paternity.  About two years later, after Alix moved herself and Jessica to California, Brian filed a petition to establish his paternity.  He was found to be Jessica's father, and shortly thereafter petitioned for custody of Jessica.  Alix and Jessica returned to Illinois.

¶ 4     In September 2009, the trial court entered an agreed order under which Brian was to pay Alix $4,750 per month in child support for Jessica.  In September 2010, and again in February 2012, the trial court entered agreed orders under which Alix was given sole legal custody of Jessica.  In an agreed order entered on February 22, 2012, Brian agreed to pay Alix $5,000 per month in child support for Jessica.

¶ 5     Although the parties dispute the exact figures, they agree that Brian's income greatly exceeds Alix's income.  In 2013, Brian's net income was about $795,000, as shown on his Illinois W-2 form.  In February 2015, the parties filed financial disclosure statements.  Brian's stated that his gross income in 2014 was about $933,000 and that his current gross monthly income was about $39,000, while Alix's statement averred that her gross income in 2014 was about $9,500 and that her current net income was about $929 per month.

¶ 6     As relevant to the present appeal, in February 2014, Brian filed a motion to modify custody.  After briefing and a trial on the issue, on July 30, 2014, the trial court issued a letter opinion containing its findings.  Among other things, the trial court found that joint custody was not possible due to conflicts between the parents; both parents had a good relationship with Jessica and desired to have her live with them; and Brian was more willing than Alix to facilitate a close and loving relationship between Jessica and the other parent.  For these and other reasons, the trial court found that Brian should have sole legal custody of Jessica.  Regarding child

support, the trial court noted that Brian had made no request to modify child support. The trial court stated, "The statute [(750 ILCS 5/505 (West 2014))] is clear that both parties have the financial obligation to support the child and Brian's income provides him with an extraordinary ability to provide [Alix] with the same amount of support so that she will have a home for the child when the child is with her."

¶ 7    That same date, the trial court entered a judgment order incorporating its letter opinion and transferring sole legal custody of Jessica to Brian. (Later that day, the trial court entered an amended judgment that made certain minor corrections.) Parenting time was divided as follows: winter and spring school breaks, Jessica's birthday, and other holidays were split evenly between the parties; during the school year, Jessica would spend her time outside of school roughly equally with both parents; and during the summer, the same schedule would apply, but Jessica would spend the pick-up and drop-off days primarily in Brian's care and each parent would have a 14-day block of uninterrupted time with Jessica for vacations. Regarding child support, the judgment order stated: "All provisions for the payment of child support shall remain in full force and effect." Alix filed an appeal from this order but then voluntarily dismissed the appeal.

¶ 8    In October 2014, Brian moved to terminate his child support obligation and establish Alix's child support obligation. Brian argued that Alix should pay child support of at least $10 per month, which is the statutory minimum under section 14 of the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/14 (West 2014)). He also requested that his own child support obligation be terminated or reduced as he was now the "custodial parent" of Jessica, and Alix no longer had the majority of parenting time. Alix filed a motion to strike Brian's motion (this motion to strike was later denied), but did not otherwise file any written response.

¶ 9    On February 26, 2015, the trial court held an evidentiary hearing on Brian's motion. Alix, Brian, and Brian's business accountant, Howard Gamer, testified. Gamer stated that Brian's gross income for 2014 was about $39,000 per month. (Brian's financial statement reflected tax and FICA deductions of about $18,000, resulting in a net monthly income of a little less than $21,000.) Gamer estimated that Brian's 2014 W-2 form would likely show about $600,000 in gross income. He also testified that Brian's business's income had decreased in the last few years because one of its major clients filed bankruptcy in 2012. Brian likewise testified that his income had decreased. However, he had three cars, including an Audi A8, a Jaguar, and a Cadillac Escalade, and he bought a new Harley Davidson in 2014, paying $27,000 in cash. Brian also took multiple expensive vacations and deposited over $52,000 into his 401(k) account. As noted above, Alix's financial statement (filed on the date of the hearing) stated that her current monthly income was about $929. She also testified that, although various adults including Brian's son from another relationship lived with her for various periods of time, none of them contributed financially to the household by paying utility bills or rent.

¶ 10   In ruling on Brian's motion, the trial court first addressed Brian's request to terminate or modify the prior child support order. Noting that a prior child support order was in place, it stated that Brian bore the burden of proof to justify any change in that order. It found that Brian had shown a substantial change in circumstances since the prior order, based upon the change in legal custody. It then found that termination of Brian's child support obligation was not appropriate, as section 505 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/505 (West 2014)) specifically provides that both parents have an obligation to support their children, and termination of all support would greatly diminish Alix's ability to provide a stable home for Jessica during Alix's parenting time. Regarding the appropriate

amount of support that Brian should pay, the court found that, although some of Brian's testimony was not credible regarding his need to borrow money during the previous year in order to pay his income taxes, nevertheless the evidence supported Brian's contention that his income had decreased. The trial court therefore decreased Brian's child support obligation by $1,000 per month, to $4,000 per month. Finally, as to Brian's argument that the Parentage Act required Alix, as the noncustodial parent, to pay at least some amount of child support, the trial court stated that the issue was "not before the Court" because Brian had not filed a petition requesting such relief. The written order entered on February 26, 2015, stated only that, for the reasons stated on the record, the trial court granted Brian's motion to modify and reduced child support to $4,000 per month, retroactive to January 1, 2015. Brian filed a timely notice of appeal.

¶ 11                                    II. ANALYSIS

¶ 12    Brian raises a number of arguments in this appeal, in a rather scattershot manner. We address these arguments not in the order in which they are raised, but as they are relevant to our analysis. We begin with a discussion of the statutes involved.

¶ 13    The Parentage Act (750 ILCS 45/1 *et seq*. (West 2014)) governs the rights and duties of parents who have never married each other. The Parentage Act declares that "Illinois recognizes the right of every child to the physical, mental, emotional and monetary support of his or her parents" (750 ILCS 45/1.1 (West 2014)), and that "[t]he parent and child relationship, including support obligations, extends equally to every child and to every parent, regardless of the marital status of the parents" (750 ILCS 45/3 (West 2014)). Section 14 of the Parentage Act permits a trial court to enter judgments that determine which parent shall have custody of a child, establish visitation or parenting time schedules, and determine child support obligations. 750 ILCS

45/14(a)(1) (West 2014). With reference to child support determinations in parentage cases, section 14(a)(1) provides, in pertinent part:

> "Specifically, in determining the amount of any child support award or child health insurance coverage, the court shall use the guidelines and standards set forth in subsection (a) of Section 505 *** of the *** Marriage Act [(750 ILCS 5/505 (West 2014))]. For purposes of Section 505 of the *** Marriage Act, 'net income' of the non-custodial parent shall include any benefits available to that person under the Illinois Public Aid Code or from other federal, State or local government-funded programs. *The court shall, in any event and regardless of the amount of the non-custodial parent's net income, in its judgment order the non-custodial parent to pay child support to the custodial parent in a minimum amount of not less than $10 per month ***.*" (Emphasis added.) *Id.*

Thus, section 14 of the Parentage Act directs that child support for the children of unmarried parents must be calculated in the same manner as support for the children of married parents, applying the guidelines and presumptions of section 505 of the Marriage Act. However, section 14 of the Parentage Act also explicitly requires a minimum payment by the noncustodial parent to the custodial parent of not less than $10 per month.

¶ 14    Section 505 of the Marriage Act, in turn, states that "[t]he duty of support owed to a child includes the obligation to provide for the reasonable and necessary educational, physical, mental and emotional health needs of the child." 750 ILCS 5/505(a) (West 2014). To accomplish the goal of enforcing this obligation, "the court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for the support of the child, without regard to marital misconduct." *Id*.

¶ 15    Section 505(a) sets out guidelines establishing presumptive levels of support, requiring the payment of a certain percentage of the "supporting party's" income that varies depending on the number of children requiring support.  When there is only one child, as in this case, section 505 guidelines require the payment of 20% of the supporting party's net income.  750 ILCS 5/505(a)(1) (West 2014).  A trial court may, after considering certain factors, order child support in an amount different than the amount required under the guidelines, but it must set out the reasons for its deviation from the guidelines.  750 ILCS 5/505(a)(2) (West 2014).  The factors to be considered in setting child support include both parents' "financial resources and needs," and the "physical, mental, *** emotional," and educational needs of the child.  *Id.*

¶ 16    In *In re Marriage of Turk*, 2014 IL 116730, our supreme court considered the question of whether section 505 of the Marriage Act permitted a trial court to order a father with legal custody of the children to pay child support to the noncustodial mother.  The father argued that, under section 505, child support obligations could be imposed only on noncustodial parents. *Id.* ¶ 16.  The supreme court rejected this argument, noting that "section 505 expressly confers on courts the option to 'order *either or both parents* owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for the support of the child.' "  (Emphasis in original.)  *Id.* (quoting 750 ILCS 5/505(a) (West 2012)).  None of the statutory factors to be applied in determining whether a deviation from the guidelines should be ordered suggested that custody of the child was a dispositive consideration.  "Rather, the statute makes clear that a range of considerations may affect the court's assessment, including the means, needs and capacity to produce income of both parents, custodial and noncustodial alike, with the ultimate objective of serving the best interest of the child."  *Id.* ¶ 18.  Noting the disparate incomes of the parties (the custodial father had income of about $150,000 per year while the noncustodial mother's income

was less than $10,000 per year) and the fact that, under the visitation schedule, the children would be in the mother's care "for periods that rival those of the custodial parent and at commensurate cost" (*id.* ¶ 24), the supreme court held that, "under section 505, a trial court may order the custodial parent to pay child support to the noncustodial parent where circumstances and the best interest of the child warrant it" (*id.* ¶ 31).

¶ 17    In the present appeal, Brian offers little argument regarding why *Turk* should not be dispositive on the issue of whether the trial court could order him to pay child support to Alix. He argues that *Turk* is distinguishable on its facts because there, the noncustodial mother earned only $10,000 per year, lived alone, and had substantially equal parenting time with the child. However, here the income disparity is even greater than in *Turk*: Alix earned less than $10,000 in 2014 and was likely to earn only slightly more in 2015 (and there was no evidence that any of the adults who have stayed with her from time to time contributed to the household income), while Brian earns substantially more than the custodial father in *Turk*. And, as in *Turk*, both parties have similar amounts of parenting time with the child. (Brian's argument that Alix has only 34% of the total parenting time incorrectly fails to account for the time Jessica spends at school on the transfer days; when that time is added in, the parties have similar amounts of parenting time.)

¶ 18    Moreover, *Turk* involves the same legal and policy principles. Although *Turk* involved divorced parents rather than never-married parents, the Parentage Act expressly states that child support obligations under that statute "extend[] equally to every child and to every parent, regardless of the marital status of the parents." 750 ILCS 45/3 (West 2014). Further, section 14 of the Parentage Act commands that child support in parentage cases must be determined with reference to section 505 of the Marriage Act, and thus both *Turk* and this appeal involve the

application of section 505 of the Marriage Act. Accordingly, we find *Turk* to be directly on point. By contrast, the cases cited by Brian—*Department of Public Aid ex rel. Nale v. Nale*, 294 Ill. App. 3d 747 (1998), and *In re Marriage of Blaisdell*, 142 Ill. App. 3d 1034 (1986)—involve different facts and legal questions. Moreover, as those cases are older and were issued by the appellate court rather than the supreme court, we are bound to follow the rule laid down more recently in *Turk*. We thus find that the trial court was authorized to order Brian to pay child support, despite his status as the custodial parent.

¶ 19 Brian argues that the trial court "exceeded its judicial authority" by awarding child support to Alix when she had not filed any petition seeking child support. Similarly, he argues that the trial court erred in placing the burden on him to show grounds for modifying child support rather than requiring Alix to show why she should receive child support. Both of these arguments misstate the procedural posture of the case, however. When Brian gained custody in July 2014, a court order requiring him to pay child support was already in place. Although a change in legal custody is usually a "substantial change in circumstances" for the purposes of modifying a prior child support order, nothing in the statutory scheme required the trial court to automatically terminate or modify its prior order. Thus, Alix was not required to file any new petition for child support. After Brian filed his motion to terminate or modify his own child support obligation, he bore the burden of showing that the prior order should be modified or terminated. *In re Marriage of Sassano*, 337 Ill. App. 3d 186, 194 (2003).

¶ 20 Brian also contends that the child support award was excessive and provides Alix with a windfall. A trial court enjoys broad discretion in determining the modification of child support, and we will not overturn its decision unless there is an abuse of discretion. *In re Marriage of Hill*, 2015 IL App (2d) 140345, ¶ 17. An abuse of discretion occurs when the trial court's ruling

is arbitrary, fanciful, or unreasonable, or when its ruling rests on an error of law. *People v. Olsen*, 2015 IL App (2d) 140267, ¶ 11. Here, the record reflects that the trial court made credibility findings and carefully considered the evidence presented regarding both parents' resources and needs as well as the child's needs—the very factors it was required to consider under section 505(a) of the Marriage Act. Further, given that Brian's net monthly income was a little less than $21,000, the $4,000 monthly child support order appears to be roughly in line with the 20% statutory guideline for one child. For all of these reasons, we do not find that the trial court abused its discretion in setting the amount of Brian's child support obligation.

¶ 21 We next consider Brian's challenge to the trial court's refusal to consider whether Alix should be ordered to pay him some amount of child support. The trial court stated that it would not order such relief because Brian had not requested it. At least in terms of the written record, this statement is incorrect. Brian's motion specifically requested that Alix be ordered to pay him child support: that request appears in the title ("Father's Petition to Terminate His Child Support Obligation and To Set Mother's Child Support Obligation"); the body of the motion (conceding that Alix "perhaps should not pay guideline child support because of Father's substantially-higher gross income—she should pay the statutory minimum of $10 per month, however"); and the concluding prayer for relief (asking the trial court to set Alix's child support obligation at no less than $10 per month). Thus, the written record reflects that Brian did request such relief.

¶ 22 However, the record of the oral argument on Brian's motion contains ample basis for the trial court's error: the confusion created by the statements of Brian's attorney during closing arguments. There, the following colloquy occurred:

> "MR. RUGGIERO [Brian's attorney]: To perfectly clarify, the Paternity [*sic*] Act
>
> says the noncustodian shall pay even if she is on public aid and no less than $10.00 a

month. The Paternity Act only incorporates by reference very limited portions of 505A, the guidelines.

THE COURT: Just so that I'm clear, your petition is to reduce and you also have a petition that she pay.

MR. RUGGIERO: No. No.

THE COURT: So you didn't file a petition asking her to pay you child support, did you?

MR. RUGGIERO: Actually even our motion to reduce even says we're not looking for child support from mom.

THE COURT: Okay. So the arguments that even if she was on public aid she would have to pay. How is that relevant since you are not seeking that she pay you a dime?

MR. RUGGIERO: Well, she could pay the ten dollar minimum --

THE COURT: Yeah, but you just said you are not asking for it nor did he ever file a petition asking that she be ordered to pay you child support.

MR. RUGGIERO: That's not a waiver of what the Paternity Act states. We are not seeking anything more than -- we're not really seeking child support from the mother.

THE COURT: Okay. I absolutely agree you haven't filed anything asking for that. So your argument about whether -- Mr. Ruggiero, I know you understand me. Did you file -- I don't have any pleading that says you ever filed anything asking that she be ordered to pay you child support.

MR. RUGGIERO: Oh, that's true.

THE COURT: That's all I said.

MR. RUGGIERO: Okay. I just didn't understand you.

THE COURT: No. I just want to make sure. Because when you argue that the statute says that even if she was on public aid she would have to pay but you never asked me to make any findings about that. You never pled anything like that asking her to be ordered to pay child support.

MR. RUGGIERO: My client is not seeking child support from the mother in this situation.

THE COURT: Okay.

MR. RUGGIERO: Not looking for child support from her. The Act [--] for the purposes of the Act it says [--] the Act says she shall pay no less than ten. That doesn't mean that we're waiving the protection under the Act that my client as custodian is now on the paying end of child support.

THE COURT: I don't understand what you just said.

MR. RUGGIERO: Okay. [Attorney then makes lengthy argument that Brian is contributing financially in other ways besides child support and that Alix has the resources and ability to contribute to the support of Jessica by paying "all of the costs she incurs while the child is *** in her care and custody."]

*** So for those reasons, your Honor, because my client is willing to pay these other costs of the child and he is not seeking I should say anything more than the ten dollar a month minimum, it's a [*de minimis*] amount that the Paternity Act requires in my position. That [*sic*] his child support should be if you are not going to eliminate it as a matter of law to be reduced to an amount that the Court determines. ***"

Given these contradictory statements by Brian's attorney, we do not in the least blame the trial court for concluding that Brian was waiving or abandoning his request that Alix be required to pay some child support. Nevertheless, the "last word" by Brian's attorney on the subject was that Brian *did* wish Alix to contribute the statutory minimum in child support, although he did not seek any contribution greater than that: "he is not seeking *** anything more than the ten dollar a month minimum." This request essentially echoed Brian's prayer for relief in his written motion. In light of the plain language of section 14 of the Parentage Act requiring the noncustodial parent to make such a contribution, we therefore hold that the trial court should have granted Brian the only relief he did not waive and should have imposed the statutory minimum support obligation on Alix.

¶ 23    Alix argues that section 14 of the Parentage Act governs only the initial child support order, while modification of child support orders is governed by section 16 of that statute, which provides that "[a]ny support judgment is subject to modification or termination only in accordance with Section 510" of the Marriage Act. 750 ILCS 45/16 (West 2014). Alix argues that the $10 minimum contained in section 14 thus does not apply. However, there was no prior judgment requiring Alix to pay child support. Thus, as to her, the trial court must make an initial determination regarding the child support she should pay, and that determination is governed by section 14 of the Parentage Act. Alix also argues that *Anderson v. Heckman*, 343 Ill. App. 3d 449 (2003), holds that child support in parentage cases may be modified only in conformity with sections 505 and 510 of the Marriage Act. However, the statutory minimum payment of $10 per month was not at issue in *Anderson*, which involved a prior support order imposed against a noncustodial spouse. Thus, *Anderson* is inapposite.

¶ 24 Under Illinois Supreme Court Rule 366(a)(5), we may "enter any judgment and make any order that ought to have been *** made."  Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994).  As imposition of the $10 minimum child support obligation upon Alix was the only relief unequivocally sought by Brian before the trial court, and section 14 of the Parentage Act requires the imposition of that obligation upon Alix as the noncustodial parent, we modify the trial court's ruling as to Brian's child support obligation to $3,990 per month, reflecting a $10 per month setoff for Alix's own child support obligation.

¶ 25 III. CONCLUSION

¶ 26 For the reasons stated, we affirm the order of the circuit court of Du Page County dated February 26, 2015, granting Brian's motion to modify child support, but modify that order to set Brian's net monthly child support obligation at $3,990.

¶ 27 Affirmed as modified.