2019 IL App (1st) 182014-U

No. 1-18-2014

Order filed December 19, 2019

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| AMANDA JONES, | ) | Appeal from the Circuit |
| | ) | Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | No. 15 L 9223 |
| v. | ) | |
| | ) | |
| THOMAS ROTH, | ) | Honorable |
| | ) | Marguerite A. Quinn, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court.
Justice Reyes concurred in the judgment.
Presiding Justice Gordon specially concurred.

**ORDER**

¶ 1    *Held*:  In a suit stemming from a car accident between plaintiff and defendant, the trial court did not err in determining, as a matter of law, that defendant's negligence was not a proximate cause of injuries that plaintiff suffered in a subsequent accident because the second accident was not a reasonably foreseeable result of defendant's negligence. Nor did the circuit court err in barring plaintiff from introducing evidence of injuries she sustained in the second accident because she proffered no expert testimony causally linking those injuries to the initial accident involving defendant. Finally, the trial court properly instructed the jury that it could consider the violation of traffic statutes as evidence of negligence.

¶ 2     This suit arises from a car accident between plaintiff Amanda Jones and defendant Thomas Roth. A jury determined that Roth was 51% at fault for the accident and that Jones was 49% contributorily negligent. The jury awarded Jones $20,400 in damages after accounting for her comparative fault. On appeal, Jones argues that the trial court erred in barring evidence of a subsequent accident that she contends was proximately caused by Roth's negligence and resulted in the aggravation of injuries that she initially sustained in the car accident. Jones also argues that the trial court erroneously instructed the jury that it could consider the violation of certain traffic laws as evidence of negligence. For the reasons that follow, we affirm the circuit court's judgment.[1]

¶ 3                                    I. BACKGROUND

¶ 4     In September 2013, Jones and Roth were involved in a car accident at the intersection of North Avenue and Sedgwick Street in Chicago. Jones was traveling eastbound on North Avenue at 30 miles per hour as she approached Sedgwick. She testified that the traffic light turned yellow before she entered the intersection but that she proceeded through the intersection at the same speed because she did not think that she would be able to safely stop. Meanwhile, Roth was traveling westbound on North Avenue and had entered the left-turn lane at Sedgwick. At trial, Roth testified that he entered the intersection and came to a stop while the traffic light was yellow but did not begin his left turn until the light changed to red. At a pretrial deposition, however, Roth testified that he began his turn while the light was still yellow. As Roth turned left onto Sedgwick, he and Jones collided in the intersection.

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 5 The next morning, Jones saw a doctor because she was experiencing pain in her back, left shoulder, and left knee. She was given pain medication and referred to a physical therapist. After several months of physical therapy, her back and shoulder pain resolved, but her knee pain did not. In March 2014, Jones saw Dr. Gregory Primus, an orthopedic surgeon, due to the continuing pain in her left knee. Dr. Primus diagnosed Jones with chondromalacia of the patella (damaged or worn cartilage under the kneecap) and recommended additional physical therapy. Jones's knee pain persisted, however, and on July 9, 2014, Dr. Primus performed arthroscopic surgery. The surgery revealed synovitis (tissue inflammation) in the knee joint, which Dr. Primus addressed by removing the inflamed tissue. Following surgery, Dr. Primus recommended additional physical therapy. At a postoperative visit on August 18, 2014, Jones reported that her knee was "doing a lot better" and that her symptoms had improved. Dr. Primus advised Jones to continue with physical therapy and return to him in a month.

¶ 6 Unfortunately for Jones, on August 25, 2014, she was involved in another accident. While in California for a work conference, she boarded a bus using an electric mobility scooter. Her physical therapist advised her to use the scooter during the trip to avoid walking on hilly terrain. According to Jones, the bus driver "negligently and improperly" harnessed the scooter, causing it to topple over when the bus made a routine turn. Jones was thrown from the scooter and the device landed on her. Three days later, Jones returned to Dr. Primus, complaining of renewed pain in her back, shoulder, and left knee. Eventually, in March 2016, Dr. Primus performed a second surgery on Jones's left knee to reconstruct a damaged ligament. In an evidence deposition, Dr. Primus testified that the knee pain that Jones experienced following the accident on the bus was not related to the earlier car accident.

¶ 7    Prior to trial, Roth filed a motion *in limine* to bar evidence of the bus accident and any injuries that Jones suffered or expenses she incurred as a result of the bus accident. Roth argued that his alleged negligence leading to the car accident was not a proximate cause of Jones's subsequent bus accident because the bus accident was not a reasonably foreseeable result of the car accident. Roth also argued that Jones had not proffered any expert evidence linking the injuries she suffered in the bus accident to the car accident. The trial court granted the motion. The court concluded that any negligence by Roth could not be deemed to have proximately caused the injuries Jones suffered in the bus accident because that accident was "separate" from the car accident involving Roth and was "not [a] foreseeable *** result" of Roth's alleged negligence. Moreover, in light of Dr. Primus's testimony, the court concluded that Jones lacked evidence that could connect the knee problems she experienced following the bus accident to the car accident. The trial court thus barred Jones from presenting evidence of the bus accident and her resulting injuries.[2] The trial court also determined that the jury would not be instructed to consider any damages that Jones sustained as a result of the bus accident. Later, at the jury instruction conference, the trial court adhered to its ruling on the motion *in limine* and denied Jones's request to instruct the jury that she could recover damages for expenses and other losses incurred following the bus accident.

¶ 8    When instructing the jury, the trial court delivered three instructions modeled on Illinois Pattern Jury Instructions, Civil, 60.01 (IPI Civil 60.01). That pattern instruction is designed to "inform[ ] the jury that a statute, ordinance, or administrative regulation was in force at the time of the occurrence and [that] the jury may consider its violation as evidence of negligence."

_____

[2] To comply with this order, the court redacted the evidence depositions of Dr. Primus and Jones's other treatment providers before presenting them to the jury.

(Internal quotation marks omitted.) *Bulger v. Chicago Transit Authority*, 345 Ill. App. 3d 103, 117 (2003). Defendant's Instruction No. 14 incorporated the language of section 11-601(a) of the Vehicle Code (625 ILCS 5/11-601(a) (West 2018)) and explained to the jury that "[t]he fact that the speed of a vehicle does not exceed the applicable maximum speed limit does not relieve the driver from the duty to decrease speed when approaching and crossing an intersection." Defendant's Instruction No. 15 incorporated the text of section 11-306 of the Vehicle Code (625 ILCS 5/11-306 (West 2018)), which defines the legal effect of green, yellow, and red traffic signals on vehicular traffic. Finally, Plaintiff's Instruction No. 15, based on section 11-902 of the Vehicle Code (625 ILCS 5/11-902 (West 2018)), informed the jury that "[t]he driver of a vehicle intending to turn *** left within an intersection *** shall yield the right-of-way to any vehicle approaching from the opposite direction which is so close as to constitute an immediate hazard."[3] After quoting the relevant statutory text, each of these instructions explained to the jury that, if it "decide[d] that a party violated the statute on the occasion in question, then [it] may consider that fact together with all the other facts and circumstances in evidence in determining whether and to what extent, if any, a party was negligent before and at the time of the occurrence." IPI Civil 60.01.

¶ 9      The jury returned a verdict in favor of Jones, finding that Roth was 51% at fault for the accident but that Jones was 49% contributorily negligent. The jury assessed Jones's total damages at $40,000 and, after reducing that amount in proportion to her share of fault, awarded her $20,400. Jones moved for a new trial, arguing that the trial court erred in granting Roth's

_____

[3] Although a copy of Plaintiff's Instruction No. 15 does not appear in the common law record, the report of proceedings makes clear that the trial court orally delivered the instruction to the jury.

motion *in limine* to bar evidence of the California bus accident and in delivering the IPI 60.01

instructions tendered by Roth. The trial court denied the motion, and Jones filed a timely notice

of appeal.

¶ 10                                                    II. ANALYSIS

¶ 11      Jones's first argument on appeal is that the trial court erred in granting Roth's motion *in*

*limine* to bar evidence of the California bus accident and Jones's resulting injuries. A trial court's

decision to grant or deny a motion *in limine* is generally reviewed for an abuse of discretion. See

*Chicago Exhibitors Corp. v. Jeepers! of Illinois, Inc.*, 376 Ill. App. 3d 599, 606 (2007). "An

abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, or unreasonable, or

when its ruling rests on an error of law." *McClure v. Haisha*, 2016 IL App (2d) 150291, ¶ 20; see

also *North Spaulding Condominium Association v. Cavanaugh*, 2017 IL App (1st) 160870, ¶ 46

("If a trial court's decision rests on an error of law, then it is clear that an abuse of discretion has

occurred, as it is always an abuse of discretion to base a decision on an incorrect view of the

law."). "To determine whether the circuit court applied the wrong legal standard in exercising its

discretion requires us to first determine the correct legal standard, which is a question of law that

we review *de novo*." *Myrick v. Union Pacific R.R. Co.*, 2017 IL App (1st) 161023, ¶ 21.

¶ 12      In a negligence action, the plaintiff must prove that the defendant owed the plaintiff a

duty of care, that the defendant breached that duty, and that the defendant's breach was a

proximate cause of injury to the plaintiff. *Monson v. City of Danville*, 2018 IL 122486, ¶ 41. At

issue here is the proximate cause element, which "embodies two distinct concepts: cause in fact

and legal cause." *Turcios v. DeBruler Co.*, 2015 IL 117962, ¶ 23. A defendant's conduct is the

cause in fact of a plaintiff's injury if the injury "would not have occurred 'but for' the

defendant's conduct," or if the defendant's conduct "was a 'substantial factor' in bringing about the harm." *Stanphill v. Ortberg*, 2018 IL 122974, ¶ 34. Legal cause, by contrast, "involves an assessment of foreseeability." *Turcios*, 2015 IL 117962, ¶ 24. "The relevant inquiry is whether 'the injury is of a type that a reasonable person would see as a likely result of his or her conduct.'" (Emphasis omitted.) *Abrams v. City of Chicago*, 211 Ill. 2d 251, 258 (2004) (quoting *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 260 (1999)). Where, as here, "the plaintiff's injury results not from the defendant's negligence directly but from the subsequent, independent act of a third person," the question is "whether the first wrongdoer reasonably might have anticipated the intervening efficient cause [that is, the third person's subsequent, independent act] as a natural and probable result of the first party's own negligence." (Internal quotation marks omitted.) *Abrams*, 211 Ill. 2d at 259. Under either formulation, legal cause is "established only if the defendant's conduct is so closely tied to the plaintiff's injury that he should be held legally responsible for it." (Internal quotation marks omitted.) *Young v. Bryco Arms*, 213 Ill. 2d 433, 446 (2004). "Although the issue of proximate cause is ordinarily a question of fact determined by the trier of fact, it is well settled that it may be determined as a matter of law by the court where the facts as alleged show that the plaintiff would never be entitled to recover." *Abrams*, 211 Ill. 2d at 257-58.

¶ 13    Jones contends that the trial court erred in determining, as a matter of law, that Roth was not a proximate cause of the injuries she suffered in the bus accident. Roth does not dispute that there was sufficient evidence to prove that he was a cause in fact of those injuries. After all, a jury could have found that but for Roth's negligence, Jones would not have been required to use a scooter while recuperating from her initial knee surgery following the car accident and thus

would not have been injured when a bus driver negligently failed to secure the scooter and caused it to topple over on a moving bus. The issue here, however, is whether a jury also could have found that Roth's negligence was a *legal cause* of the injuries Jones suffered on the bus. We agree with the trial court that Jones's allegations and proffered evidence were insufficient, as a matter of law, to establish that Roth was a legal cause of Jones's bus accident and resulting injuries. That Jones would be injured nearly a year after her car accident with Roth by the intervening negligence of a bus driver failing to properly harness her scooter was not a reasonably foreseeable result of Roth's negligence.

¶ 14   Jones relies on the principle, articulated in the Restatement (Second) of Torts, that a "negligent actor [who] is liable for an injury which impairs the physical condition of another's body *** is also liable for harm sustained in a subsequent accident which would not have occurred had the other's condition not been impaired, and which is a normal consequence of such impairment." Restatement (Second) of Torts § 460 (1965). The Fifth District applied this principle in *Stephenson v. Air Products and Chemicals, Inc.*, 114 Ill. App. 2d 124 (1969). There, the plaintiff, a painter, injured his leg when he fell while painting a flag pole on the defendant's premises. *Id.* at 129. Several years later, after returning to work as a painter, the plaintiff was injured again when his leg gave out and caused him to fall. *Id.* In a negligence suit against the defendant, the plaintiff sought to recover for the injuries he suffered in his initial fall as well as those he sustained in the subsequent accident. *Id.* at 128. The trial court allowed the plaintiff to present evidence of the second accident and his resulting injuries, and the appellate court affirmed, concluding that the evidence was sufficient to establish that the plaintiff's second fall was a normal consequence of the injuries he sustained in the first fall. *Id.* at 132-33.

¶ 15    We accept the principle articulated in section 460 of the Restatement and applied in *Stephenson*, but we find it inapplicable here. In *Stephenson*, the plaintiff alleged that his subsequent accident occurred "without the intervention of any intervening cause or condition." *Id.* at 129. Jones, by contrast, alleges that her bus accident resulted from the intervening negligence of a third party. The Restatement expressly reserves the question of "whether [an] actor whose negligence has weakened the physical condition of another's body is *** also liable for later harm resulting from the subsequent negligence of a third person." Restatement (Second) of Torts § 460 (1965). We do not rule out the possibility that a tortfeasor whose negligence causes a person to be physically impaired may be held liable for later harm resulting from a combination of that impairment and a third party's negligence. But such liability is appropriate only if the plaintiff can demonstrate, under well-settled principles of Illinois tort law, that the defendant's negligence was a legal cause (in addition to a but-for cause) of the plaintiff's subsequent injury. To do so, the plaintiff must establish that the third party's negligence was a reasonably foreseeable result of the defendant's conduct. As our supreme court explained in *Abrams*, in the "special subset of proximate cause cases involving injuries caused by the intervening acts of third persons," the legal cause inquiry asks "whether the defendant might have reasonably anticipated the intervening efficient cause as a natural and probable result of his own negligence." 211 Ill. 2d at 259. Stated differently, the question in such cases is "whether the intervening efficient cause was of a type that a reasonable person would see as a likely result of his conduct." *Id.*

¶ 16    Based on Jones's allegations and the evidence that she proffered below, we conclude, as a matter of law, that the bus driver's negligence in securing Jones's scooter was not a reasonably

foreseeable result of Roth's earlier negligence. While a defendant need not have reasonably foreseen "the precise injury" that resulted from his conduct, *Williams v. University of Chicago Hospitals*, 179 Ill. 2d 80, 87 (1997), the injury must be "of a type that a reasonable person would see as a likely result of his or her conduct," *Galman*, 188 Ill. 2d at 258. An example of the type of third-party negligence that is reasonably foreseeable was discussed in *Kramer v. Szczepaniak*, 2018 IL App (1st) 171411. There, an Uber driver kicked two passengers out of his car at 2:00 a.m. in a poorly lit, high traffic area that was unfamiliar to them. *Id.* at ¶¶ 6-10. Forced to walk home, the passengers were struck by a hit-and-run driver in a crosswalk. *Id.* at ¶ 8. The passengers sued the Uber driver (among others) to recover for their injuries. The trial court dismissed the complaint on the ground that the passengers could not establish that the Uber driver was a proximate cause of their injuries, but this court reversed. *Id.* at ¶¶ 3-4. We held that, on the facts alleged, the possibility that the passengers would be struck by a negligent motorist was within the scope of the risk that the Uber driver created by stranding them in an unfamiliar, dimly lit, high traffic area. See *id.* at ¶ 42 (concluding that, under the circumstances as alleged, we could not "say that the danger of being hit by a car was so remote as to be unforeseeable as a matter of law"). Here, by contrast, the connection between Roth's negligent driving in September 2013 and the bus driver's negligence in securing Jones's scooter in August 2014 is simply too remote and attenuated to support a finding that Roth's conduct was "so closely tied to [Jones's] injury that he should be held legally responsible for it." (Internal quotation marks omitted.) *Young*, 213 Ill. 2d at 446. The trial court thus correctly determined, as a matter of law, that Roth's negligence could not be deemed a proximate cause of the injuries Jones suffered in the bus accident.

¶ 17    Jones also argues that, even if Roth was not a proximate cause of the bus accident, the trial court nevertheless erred in barring her from presenting evidence of the expenses and other losses she incurred following the bus accident because that accident merely aggravated the injuries that she sustained in the earlier car accident. Jones contends that the jury should have been allowed to apportion responsibility for the damages she incurred following the bus accident between Roth and the bus driver "on the basis of the relative degree to which [each tortfeasor's] conduct proximately caused [her] injuries." The problem with this argument, however, is that Jones proffered no expert evidence linking the injuries she suffered following the bus accident to the earlier car accident with Roth. Indeed, as the trial court observed, Jones's own expert, Dr. Primus, testified that the knee problems that Jones experienced after the bus accident were not related to her earlier car accident.

¶ 18    In *Voykin v. Estate of DeBoer*, 192 Ill. 2d 49 (2000), our supreme court held that a defendant who seeks to avoid liability for a plaintiff's current injuries by presenting evidence that those injuries resulted from a prior accident "must introduce expert evidence demonstrating why the prior injury is relevant to causation, damages, or some other issue of consequence." *Id.* at 59. This rule recognizes that "the connection between *** past and current injuries is a subject that is beyond the ken of the average layperson" and that jurors normally cannot "effectively or accurately assess the relationship between a prior injury and a current injury without expert assistance." *Id.* Jones does not dispute that the *Voykin* rule likewise applies where, as here, the plaintiff seeks to introduce evidence that her current injuries were causally related to a prior accident.

¶ 19    Instead, Jones contends that the trial court misconstrued Dr. Primus's testimony. But when asked whether he was "able to say that any knee issue that [Jones] was having [when he examined her shortly after the bus accident] was related or unrelated to the previous [car] accident," Dr. Primus stated that "[i]t was not." Jones argues that Dr. Primus did not definitively state that her knee issues following the bus accident were not related to the earlier car accident (as the trial court concluded), but that he was simply unable to say whether such a relationship existed. But we fail to see how this interpretation of Dr. Primus's testimony is helpful to Jones, as it still fails to satisfy *Voykin*'s requirement of expert evidence causally linking her injuries to the car accident. Regardless, the trial court's interpretation of Dr. Primus's testimony was neither arbitrary nor unreasonable and so we must defer to it. See *Department of Transportation v. Dalzell*, 2018 IL App (2d) 160911, ¶ 66 (trial court's factual findings in support of ruling on motion *in limine* "are reviewed under the manifest-weight-of-the-evidence standard"). Jones also suggests that Dr. Primus offered additional testimony that was more favorable to her, but she has forfeited this contention by failing to quote or cite any portion of the record in support of it. See *Castillo v. Stevens*, 2019 IL App (1st) 172958, ¶ 58 (citing Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017)). For these reasons, we conclude that the trial court did not err in barring Jones from presenting evidence of the bus accident and her resulting injuries, and that the court likewise did not err in refusing to allow the jury to assess damages against Roth for injuries and expenses Jones sustained following the bus accident.

¶ 20    Finally, Jones contends that the trial court erred in giving the two IPI Civil 60.01 instructions tendered by Roth that informed the jury that it could consider a party's violation of certain traffic statutes as evidence of negligence. We find no error. "A litigant has the right to

have the jury clearly and fairly instructed upon each theory which was supported by the evidence." *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 100 (1995). "All that is required to justify the giving of an instruction is that there be some evidence in the record to justify the theory of the instruction." *Heastie v. Roberts*, 226 Ill. 2d 515, 543 (2007). "The test in determining the propriety of tendered instructions is whether the jury was fairly, fully, and comprehensively informed as to the relevant principles, considering the instructions in their entirety." *Leonardi*, 168 Ill. 2d at 100. A trial court's decision to give an instruction is reviewed for an abuse of discretion. *Studt v. Sherman Health Systems*, 2011 IL 108182, ¶ 13. Under this standard, we ask "whether, taken as a whole, the instructions [were] sufficiently clear so as not to mislead and whether they fairly and correctly state[d] the law." (Internal quotation marks omitted.) *Id*. Whether an instruction accurately stated the applicable law, however, is a question that we review *de novo*. *Id.*

¶ 21    Jones first challenges Defendant's Instruction No. 14. Tracking the language of section 11-601(a) of the Vehicle Code, that instruction informed the jury that a statute in effect at the time of the accident provided that "[t]he fact that the speed of a vehicle does not exceed the applicable maximum speed limit does not relieve the driver from the duty to decrease speed when approaching and crossing an intersection." 625 ILCS 5/11-601(a) (West 2018). In accordance with the language of IPI Civil 60.01, the instruction further advised the jury that, if it "decide[d] that a party violated the statute on the occasion in question, then [it] may consider that fact together with all the other facts and circumstances in evidence in determining whether and to what extent, if any, a party was negligent before and at the time of the occurrence." There is no question that this instruction, which simply quoted the text of a statute, accurately conveyed the

applicable law. Indeed, Jones does not (and cannot) contend that the instruction misstated the traffic rules contained in section 11-601(a) of the Vehicle Code. Nor does she dispute that a jury may properly consider a party's violation of that statute, along with all other relevant facts and circumstances, as evidence of negligence. See *Leaks v. City of Chicago*, 238 Ill. App. 3d 12, 18 (1992) ("Violation of a statute or ordinance designed for the protection of human life or property is *prima facie* evidence of negligence, but does not constitute negligence *per se* because the evidence of negligence may be rebutted by proof that the party acted reasonably under the circumstances, despite the violation.").

¶ 22    Jones argues instead that the instruction was misleading because it was not balanced by a "clarifying instruction" that a driver turning left must yield the right of way to oncoming traffic. But Jones overlooks the fact that the trial court did give such an instruction. Plaintiff's Instruction No. 15, tracking the language of section 11-902 of the Vehicle Code, informed the jury that "[t]he driver of a vehicle intending to turn to the left within an intersection *** shall yield the right-of-way to any vehicle approaching from the opposite direction which is so close as to constitute an immediate hazard." 625 ILCS 5/11-902 (West 2018). Considered together, these instructions "fairly, fully, and comprehensively informed [the jury] as to the relevant [legal] principles." *Leonardi*, 168 Ill. 2d at 100.

¶ 23    Jones further contends that the trial court abused its discretion in giving Defendant's Instruction No. 14 because it "misapplied the direct testimony of the witnesses and did not take into account" contradictions in Roth's trial and deposition testimony. But when assessing the propriety of a jury instruction, the question is whether "there [is] some evidence in the record to justify the theory of the instruction." *Heastie*, 226 Ill. 2d at 543. Jones herself testified that she

entered the intersection at the speed limit of 30 miles per hour. That testimony alone constituted sufficient evidence on which to instruct the jury that "[t]he fact that the speed of a vehicle does not exceed the applicable maximum speed limit does not relieve the driver from the duty to decrease speed when approaching and crossing an intersection." 625 ILCS 5/11-601(a) (West 2018). Defendant's Instruction No. 14 correctly stated the law, was supported by sufficient evidence, and fairly informed the jury of Roth's theory that Jones was at least contributorily negligent for the accident by failing to reduce her speed when entering the intersection. The trial court did not abuse its discretion in giving the instruction.

¶ 24    Jones also challenges Defendant's Instruction No. 15, which informed the jury of the legal effect of green, yellow, and red traffic signals. This challenge is both forfeited and meritless. Jones forfeited her challenge to Defendant's Instruction No. 15 by failing to object to it in the trial court. See *Studt*, 2011 IL 108182, ¶ 19 ("A party forfeits the right to challenge a jury instruction that was given at trial unless it makes a timely and specific objection to the instruction and tenders an alternative, remedial instruction to the trial court.") (internal quotation marks omitted). Indeed, at the jury instruction conference, Jones's counsel stated that Defendant's Instruction No. 15 was "fine" and that she did not "have a problem" with it. In light of those representations, she may not now challenge the instruction on appeal. Even if she had not forfeited her challenge, however, it would fail on the merits. Jones appears to concede (and we agree) that Defendant's Instruction No. 15 accurately stated the "general rule *** as to what a driver is expected to do at each color of *** traffic light." Indeed, the instruction simply quoted the relevant language from section 11-306 of the Vehicle Code (625 ILCS 5/11-306 (West 2018)). Nevertheless, Jones argues that the instruction was confusing and prejudicial because

Roth gave conflicting testimony at trial and in his pretrial deposition about whether he began his left turn when the traffic light was yellow or red. But she does not explain how that fact renders the instruction itself improper. It was within "the province of the jury to resolve conflicts in the evidence, to pass upon the credibility of the witnesses, and to decide what weight should be given to the witnesses' testimony." *Maple v. Gustafson*, 151 Ill. 2d 445, 452 (1992). Defendant's Instruction No. 15 correctly stated relevant legal principles and allowed the jury to apply those principles to the facts as it found them. See *People v. Parker*, 223 Ill.2d 494, 501 (2006) ("Jury instructions are intended to guide the jury in its deliberations and to assist the jury in reaching a proper verdict through application of legal principles to the evidence and law."). The trial court thus did not abuse its discretion in delivering the instruction.

¶ 25                                    III. CONCLUSION

¶ 26     For the foregoing reasons, we affirm the circuit court's judgment.

¶ 27     Affirmed.

¶ 28     PRESIDING JUSTICE GORDON, specially concurring:

¶ 29     I agree with the ultimate decision of the majority in this case, but I must write separately on the statement by the majority in ¶ 5 where the majority states that Dr. Primus performed arthroscopic surgery on Jones and removed inflamed tissue. The report of proceedings illustrates that Dr. Primus performed a partial meniscectomy chondroplasty on Jones. The MRI demonstrated a tear in the meniscus. The doctor testified that:

> "[W]e can either debride it, or—or smooth it out, or repair it, fix it. In terms of the articular cartilage, so that's the special lining that covers the bone, if there is a—if—if we would find any type of defect, then there's ways that we can treat that defect in a way to

reduce the irritation and pain. So if there's a loose flap, for instance, we can cut that flap, or trim it, or smooth it off, and—and then if there's inflamed tissue just throughout the knee joint in general, there's ways that we can reduce that tissue and also reduce pain.

Q. Okay. And I see this word 'synovectomy,' what does that mean?

A. So that's the inflamed tissue I was—I was referring to, so that's the synovial tissue which lines all of our joints, and if it gets inflamed, it's called synovitis *** and so part of the surgery, if someone has a lot of inflamed tissue, is to remove that tissue."

¶ 30    Dr. Primus never actually stated that he removed inflamed tissue in this case. What he did state was:

"Q. Well with respect to any different things that might—you might have seen, other than what you would have expected, or anything that took place during the surgery, or anything of that nature?

A. No, her MRI—or her—or her surgical findings were actually negative compared to the MRI findings, which was very positive for her, in that we did not have to do any meniscus work, we did not have to do any significant cartilage work. She did have the synovitis, and we debrided some of the extra synovial tissue that I talked about.

Q. Okay. Did you do anything else during that procedure?

A. No."

¶ 31    In other words, he debrided the tissue, meaning he scraped off the dead tissue to decrease the inflammation.