2016 IL App (1st) 160071

No. 1-16-0071

Fifth Division
December 23, 2016

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* PARENTAGE OF I.I., a Minor | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| (Nanina Lavallais n/k/a Carraway, | ) | |
|    Petitioner-Appellee, | ) | No. 12 D 50214 |
| | ) | |
| v. | ) | The Honorable |
| | ) | James Kaplan, |
| Michael Irvin, | ) | Judge Presiding. |
|    Respondent-Appellant). | ) | |
| | ) | |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Lampkin and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    The instant appeal arises from the trial court's grant of Nanina Carraway's petition to modify child support, in which the trial court ordered respondent, Michael Irvin, to increase the amount of child support he was paying from $100 per month to $3000 per month. Respondent appeals, arguing (1) that the trial court erred in denying his motions for a continuance, which resulted in respondent's absence from the second day of the hearing, (2) that the trial court erred in denying his motion to reopen proofs to provide evidence of his income, (3) that the trial court erred in ordering respondent to pay $3000 per month in child support and in ordering the payment of retroactive support, and (4) that the trial court erred in

requiring respondent to provide health insurance for the child. For the reasons that follow, we affirm in part but vacate the trial court's judgment concerning the retroactivity of support.

¶ 2                                                  BACKGROUND

¶ 3         On January 25, 2012, petitioner, Nanina Lavallais (n/k/a Carraway), filed a parentage action under the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/1 *et seq.* (West 2010)) against respondent, Michael Irvin, regarding their child I.I., who was born on July 27, 2007.[1] On March 2, 2012, petitioner filed a petition for support against respondent, alleging that respondent was not contributing to the support of their child to the extent of his financial ability. The petition did not state the amount of support respondent had been paying, nor did it state what amount petitioner was seeking. On March 13, 2013, after respondent repeatedly failed to respond to the petition, the trial court entered a temporary default uniform order for support, which ordered respondent to pay $100 per month beginning April 1, 2013.[2] In addition, the order reserved the issue of medical insurance coverage, as well as retroactive child support from January 1, 2011, through March 31, 2013. On August 16, 2013, the court ordered that the entirety of the temporary support order be made permanent. Up to this point, respondent had not been involved in the case.

¶ 4         On August 29, 2014, respondent finally filed his initial appearance in the matter, as well as a petition for joint custody. On October 9, 2014, petitioner filed a petition to modify child support, alleging that, upon information and belief, respondent's income exceeded $300,000 per year. This number was based on the assertion that respondent was a part owner of

---

[1]The record on appeal does not contain a court finding of paternity, but both parties signed a voluntary acknowledgment of paternity the day after the child was born, and there is no dispute that respondent is the child's father.

[2]The assistant State's Attorney representing petitioner (see 750 ILCS 45/18(b) (West 2010)) at the time imputed respondent's monthly income as $500. Child support for one child is calculated based on 20% of the monthly income of the obligor (750 ILCS 5/505(a)(1) (West 2010)), which resulted in the $100-per-month child support order.

Billboard Live, a nightclub, and was also the chief executive officer of an Amateur Athletic Union (AAU) basketball team called Mac Irvin Fire.[3] Petitioner argued that child support should be modified to be based on respondent's actual income, rather than the $500 monthly income amount imputed to him during the temporary support hearing on March 13, 2013. She also asked the court to retroactively modify the child support in accordance with respondent's actual income. On November 25, 2014, respondent filed a response to petitioner's petition to modify child support, in which he denied the petition's allegations.

¶ 5    Up to this point, respondent had not complied with petitioner's discovery requests. On December 23, 2014, petitioner filed a petition for rule to show cause against respondent for failure to comply with Cook County Circuit Court Rule 13.3.1 and Illinois Supreme Court Rule 214. The record indicates that respondent submitted an unsigned and non-notarized Rule 13.3.1 disclosure form in February 2015 that had all zeroes for his income.

¶ 6    On April 2, 2015, the petition to modify child support, petition for rule to show cause, and respondent's petition for joint custody were again continued to April 9, 2015. In the continuance order, the court also required respondent to pay petitioner a $500 lump sum for past-due child support payments and furnish a signed and notarized financial disclosure statement pursuant to Cook County Circuit Court Rule 13.3.1 before the hearing on April 9, 2015. Respondent complied with both terms of the court order. According to respondent's signed and notarized financial disclosure statement, his gross income for the year 2014 was $7200, which was made up of gifts from friends and family. He stated that his 2015 income up to March 2015 was $1880, although he did not specify if it was again made up of gifts.

---

[3]The AAU is a nonprofit multisport organization dedicated to the promotion and development of amateur sports and physical fitness programs. Amateur Athletic Union, *What is the AAU?* http://www.aausports.org/FAQs (last visited Dec. 7, 2016).

After adding in his $100-per-month expense for child support, his total monthly living expenses were $627. In the assets section, his only listed bank account was a checking account with U.S. Bank, which had a value of $0 to $20. He did not list any investment accounts in the investment accounts and securities section. The only business interest he listed was a 25% member interest in Olympian Group, LLC.

¶ 7    The parties came before the court for hearing on the pending motions on April 9, 2015. During the hearing, respondent testified to his financial situation on direct examination from petitioner's counsel. According to the agreed statement of facts from the hearing,[4] respondent testified that he lived rent-free at his mother's house. He had not had a regular job or income since 1998 and was still unemployed. He served as the head basketball coach for the Mac Irvin Fire AAU team but did not receive any income for his service. He relied on his mother, fiancée, and occasionally his brother for financial assistance. He was looking for employment solely in the field of basketball. Respondent had been a part of Antoine Walker's[5] entourage until 2010, when Walker declared bankruptcy. During respondent's time in the entourage, Walker had given him two vehicles. He admitted that he had invested approximately $40,000 in Billboard Live in 2011 or 2012 but testified that he was not receiving any income from the investment and was no longer involved with the nightclub. Respondent testified that he "does not have any interest in any other company or organization."

---

[4]There was no transcript of this hearing in the record. All information from the hearing on April 9, 2015, was taken from the parties' agreed statement of facts. The same is true for the hearings on July 7, July 9, and July 31. To avoid confusion concerning the court proceedings, we indicate where a transcript was available and where the facts were taken from the agreed statement of facts.

[5]Antoine Walker is a former professional NBA basketball player.

¶ 8     The agreed statement of facts indicates that during examination of respondent, petitioner submitted a number of social media photographs of respondent as exhibits.[6] Respondent's counsel "made numerous objections to the photographs, arguing that they allowed an inappropriate contextual picture to be painted without rebuttal." The court denied these objections, stating that it "was able to maintain the photos in the right context and that [respondent] would be given an opportunity to address any misapprehensions in rebuttal." According to the agreed statements of facts, one photograph depicted respondent with a large stack of money and a caption reading " 'Billboard Live!! About to have me some fun!!' " According to the agreed statement of facts, the photograph was taken at a Billboard Live event at least one year prior to the hearing date, and the money did not belong to respondent. Other photographs depicted social media posts in which respondent talked about Christmas gifts, obtaining a pedicure, and conducting business, among other things. None of these social media posts was more recent than 32 weeks before the April 9 hearing. The record does not show whether respondent was asked to explain these photographs. Due to the late hour, the April 9 hearing was suspended to be continued at a later date. At this point, respondent had not finished giving his testimony on direct examination from petitioner's counsel.

¶ 9     On May 12, 2015, the trial court entered an order continuing the hearing to July 9, 2015.

¶ 10     On May 15, 2015, petitioner filed a discovery request to respondent regarding documents related to respondent's alleged business affiliation with TMT Sportz, LLC, an Indiana corporation. On June 24, 2015, petitioner filed a motion to compel respondent's discovery

---

[6]The agreed statement of facts does not expressly indicate that these exhibits were admitted into evidence. However, the parties discuss them in their briefs as though they were, and we do the same in discussing them on appeal.

5

compliance, indicating that she had already sent a Supreme Court Rule 201(k) letter to respondent regarding discovery compliance. On July 2, 2015, the court heard petitioner's motion to compel and ordered respondent to comply with petitioner's discovery request by July 6, 2015. The court order from the status hearing on July 7, 2015, which is detailed further below, indicates that respondent finally complied with petitioner's discovery request.

¶ 11    According to the agreed statement of facts, on the trial readiness status date on July 7, 2015, respondent expressed that he had a conflict with the July 9 hearing date and would not be able to be present in court.[7] According to the agreed statement of facts, respondent "did not disclose or explain his sudden unavailability." Respondent's counsel requested that the hearing be rescheduled, but the court denied the request. No reasoning for the court's denial is provided in the agreed statement of facts for the July 7 hearing. The court order from this hearing notes that petitioner communicated her readiness to move on with the trial.

¶ 12    Respondent was not present during the hearing on July 9, 2015. According to the agreed statement of facts for this hearing, respondent's counsel made an oral motion to continue the hearing to a later date so respondent could continue giving his testimony but was again denied by the court. Petitioner's counsel "presented documentary evidence and argument"[8] that respondent had a business relationship with TMT Sportz, LLC, an Indiana corporation, and was a registered agent for the corporation. Respondent could be viewed in photographs on TMT Sportz's website from the 2014 "Chicago Summer Jam" basketball tournament, which cost $595 as a registration fee. Respondent was also listed on the TMT Sportz website as the contact person for the event. Respondent's business relationship with TMT Sportz had

---

[7]Although respondent did not explain his reasoning for his conflict with the July 9 hearing at the July 7 court date, the hearing transcript from October 14, 2015, indicates that he had planned to be in Georgia in order to assist with a youth basketball camp.

[8]The agreed statement of facts does not expressly indicate that this evidence was admitted, but the parties discuss the evidence in their briefs as though it was, and we do the same in discussing it on appeal.

not been disclosed on respondent's Rule 13.3.1 financial affidavit. The record does not contain any testimony regarding the extent of respondent's involvement with TMT Sportz. Part of the evidence submitted by petitioner's counsel was TMT Sportz's unsigned 2014 tax return,[9] which stated that its gross income for the year was $50,192, of which $41,900 was spent on "outside services." After petitioner's counsel presented this evidence, respondent's counsel made an oral motion to allow respondent to give his testimony via the telephone, explaining that respondent was out of the state, which was denied. The court found that respondent's failure to appear created a negative inference against him and permitted the presumption that he believed that the evidence against him would be unfavorable. The agreed statement of facts indicates that the court "found a presumption that 'outside services' as listed on TMT Sportz'[s] tax documents included, at least in part, compensation for [respondent's] services" and that the Chicago Summer Jam event was an income-producing event that was not previously disclosed on respondent's Rule 13.3.1 financial statement. The court did not provide any independent basis for drawing this presumption, other than the previously expressed negative inference against respondent.

¶ 13    Petitioner's counsel also "presented documentary evidence and argument" of bank statements as evidence for two bank accounts that respondent maintained with Chase Bank that were not disclosed in his signed Rule 13.3.1 financial disclosure statement, in which he had deposited or transferred $28,500.01 in May 2014, $25,850.01 in July 2014, and more than $87,000 between October 2014 and February 2015. The record does not contain any evidence that explains where the deposits came from or what expenses they were used for. Respondent's counsel objected to all of the documentary evidence submitted by petitioner's

---

[9]The agreed statement of facts does not identify the exhibits by number. However, the record contains a stipulated list of exhibits, one of which is the TMT Sportz 2014 tax return.

counsel because there was no person who could authenticate the documents, but the court overruled the objection and admitted all of the documents into evidence.

¶ 14    Petitioner also testified during the July 9 hearing. On direct examination by her own counsel, petitioner testified that beginning in 2007, respondent paid for an apartment and living expenses for petitioner and the child and also provided her with a vehicle to drive. Respondent provided approximately $3500 per month in child support until 2011. After 2011, petitioner and respondent agreed that respondent would pay $1000 per month for child support. However, respondent did not adhere to the agreement, and petitioner had been the child's sole support ever since.

¶ 15    On cross-examination by respondent's counsel, petitioner testified that respondent had paid for her to attend and graduate from college. From October 2013 through April 2015, respondent paid a total of $4095.10 in child support. After cross-examination ended, the court asked respondent's attorney to present any witnesses or evidence on respondent's behalf, but the attorney "could not add anything further in light of [respondent's] absence," and the hearing was continued to July 31, 2015, for closing arguments.

¶ 16    Also on July 9, 2015, petitioner filed a motion for direct and indirect criminal contempt and for sanctions against respondent.[10] In the motion, petitioner detailed facts supporting the allegation that respondent had been engaging in fraud throughout the course of litigation through his attempts to mislead the court about his finances and his repeated failure to comply with discovery rules. The alleged facts included, among others, respondent's failure to disclose his active bank accounts, income from Billboard Live, and affiliation with TMT Sportz.

---

[10]This motion itself is not at issue on appeal. It is included because some facts within the motion provide helpful context for the issues on appeal.

¶ 17    On July 31, 2015, respondent filed his response to petitioner's motion for direct and indirect criminal contempt. In the response, he admitted that he was listed as a registered agent for TMT Sportz but stated that he had never received any income from the business. Respondent denied that he omitted his bank account information from his signed Rule 13.3.1 financial disclosure statement. He reiterated that, at that point, he was receiving income of approximately $500 per month.

¶ 18    Closing arguments on petitioner's petition to modify child support and respondent's petition for joint custody were heard on July 31, 2015, and according to the agreed statement of facts from the hearing, the court found that respondent's testimony significantly lacked credibility. Specifically, the court found:

"Mr. Irvin's testimony lacks credibility to a significant degree, especially as to the following:

a. Mr. Irvin's testimony regarding not receiving Billboard income and the company being dissolved this year, though filled to capacity;

b. Mr. Irvin's mother and fiancé[e] support him and his fiancé[e] pays all his expenses;

c. Mr. Irvin has no assets and all he does is coach a team for no pay;

d. Mr. Irvin is not authorized to incur expenses on the Mac Irvin Fire credit card;

e. Mr. Irvin's disclosure filed pro se, and his updated disclosure that was not complete;

f. Others paid for Mr. Irvin to attend the NCAA finals with Duke University or go to Georgia."

¶ 19        Among other rulings irrelevant to the issues on appeal, the court granted petitioner's petition to modify child support and set the amount for respondent to pay at $3000 per month.[11] The court explained that this amount was based on petitioner's testimony, as well as a presumed income from TMT Sportz and the bank statements showing that tens of thousands of dollars ran through respondent's bank account. The child support was retroactively applied from January 1, 2011. Finally, the court ruled that respondent must provide the child with an adequate health insurance policy.

¶ 20        On August 27, 2015, respondent filed a motion to reopen proofs in order to determine his "actual income." In the motion, respondent argued that there was insufficient factual evidence of his income to support the court's modification of the child support to the amount of $3000 per month. Specifically, respondent pointed out that there was no testimony explaining the bank statements submitted by petitioner's counsel that would help determine "whether any of the deposits were income or whether the expenses would affect any of the deposits." Respondent argued that "[e]quity dictates that proofs should be reopened to require the Petitioner to provide evidence to carry her burden of proving [respondent's] income and for [respondent] to present evidence in his defense."

¶ 21        On October 14, 2015, the court denied respondent's motion to reopen proofs. According to the hearing transcript, the court found that respondent's actions during the course of the litigation diminished his credibility, rendering his actual income indeterminable from the evidence. Relying on section 505(a)(5) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/505(a)(5) (West 2010)), the court found that since it could

---

[11]According to the transcript from the hearing on October 14, 2015, petitioner's testimony from July 9 indicated that the total needs for raising the child amounted to $3000 per month. This fact is not directly expressed in the agreed statement of facts from the July 9 hearing date.

not determine respondent's actual income from the evidence, it was necessary to deviate from the statutory guidelines for determining child support and enter a needs-based order. In doing so, the court found petitioner's testimony from the July 9 hearing—that she needed $3000 per month to cover the child's expenses—credible and reasonable and found that it "had no alternative but to enter an award based on that amount because [respondent] failed to appear and give testimony." The court found that it had not abused its discretion by deviating from the guidelines for determining child support based on income. Despite argument from respondent's counsel, the court, relying on case law,[12] stated that it did not need to explain its basis for the needs-based order. The transcript also indicates that respondent's counsel argued that the court had mistakenly construed respondent's motion as a motion to reconsider, instead of a motion to reopen the proofs:

"THE COURT: A motion to reconsider allows a party to bring before the Court newly discovered evidence, changes in the law, or errors in the Court's prior application of existing law. ***

* * *

RESPONDENT'S COUNSEL: With all due respect, [Y]our Honor *** We didn't file a motion to reconsider. *** We argued a motion to reopen the proofs.

THE COURT: And I denied it.

RESPONDENT'S COUNSEL: It has nothing to do—but you cited a motion to reconsider. *** That's not the same motion.

THE COURT: I understand."

---

[12]The court noted that it was relying on *In re Marriage of Takata*, 304 Ill. App. 3d 85 (1999), and *In re Marriage of Severino*, 298 Ill. App. 3d 224 (1998).

¶ 22     On December 7, 2015, the parties came before the court for the court's entry of a custody judgment disposing of all pending issues. According to the hearing transcript, respondent argued against the retroactive application of the modified child support award to January 1, 2011. Specifically, respondent argued that petitioner filed her petition to modify child support on October 9, 2014, and that he was not put on due notice that any modification would be applied retroactively beyond that date. After hearing arguments from respondent's counsel, the court amended the starting date for the retroactive child support from January 1, 2011, to September 1, 2013, making the total amount of past-due support $72,000. The court determined that the permanent child support order from August 2013, as well as evidence admitted during trial, put respondent on necessary notice that he could be subjected to retroactive changes in child support from that date. The court also found that, with respect to health insurance, "[h]e can go get a policy and pay for it or he can reimburse mom if she does have a policy. *** That is his obligation."

¶ 23     The court entered a custody judgment on the same day. With respect to its findings of fact, the court found:

> "A. FATHER failed to appear in court on July 9, 2015, for the final day of testimony in this case.
>
> B. Based on FATHER's failure to appear for trial on July 9, 2015, failure to disclose assets and income, and the inconsistency in his testimony compared with the physical evidence, it is presumed by the Court that the evidence and testimony FATHER could have presented would have been adverse to him. [Citation.]

C. Over FATHER's objections, the Court finds that FATHER's first financial disclosure statement tendered to MOTHER's counsel during his pro se representation, while not notarized, had zeroes in all blanks.

D. FATHER's second financial disclosure statement tendered to MOTHER's counsel was notarized and while it included new information regarding his assets and liabilities it did not include his interest in TMT Sportz, Inc., nor did it disclose his Chase Bank account.

E. FATHER's testimony that he has not had a job since 1998, that he is supported solely by his mother and fiancé[e], that he has no assets, and that his only job is as a volunteer coach for the Mac Irvin Fire, is contrary to the evidence.

F. Consistent with the Court in *In re the Marriage of Leff*, [148 Ill. App. 3d 792 (1986)], by virtue of FATHER's failure to appear, failure to disclose assets and income, and the inconsistency in his testimony compared with the physical evidence, the Court finds that FATHER's testimony lacks all credibility.

G. While MOTHER testified that the needs of the child totals $3,000.00 per month, based on FATHER's lifestyle and incredible testimony, the Court finds that FATHER's income could substantiate a child support award in excess of $3,000.00 per month. [Citation.]"

¶ 24    On January 6, 2016, respondent filed a notice of appeal, and this appeal follows.

¶ 25                                    ANALYSIS

¶ 26    On appeal, respondent raises a number of issues. Respondent argues that (1) the trial court should have granted his motions for continuance of the July 9, 2015, hearing date, (2) the trial court should have granted his motion to reopen the proofs to present evidence of

13

his income since he was not present at the July 9 hearing date, (3) the trial court erred in its determination that petitioner should receive $3000 per month in child support, (4) the trial court erred in its retroactive application of the modified child support order, and (5) the trial court erred in requiring him to provide health insurance for the child because petitioner's insurance already covered the child. We consider each argument in turn.

¶ 27                                    I. Motion for Continuance

¶ 28    Respondent first contends that the trial court erred in denying his "two oral motions for a continuance" of the July 9, 2015, hearing date. As an initial matter, we must first clarify the orders at issue on appeal. As respondent notes, his counsel requested a continuance on July 7 and again on July 9, both of which were denied and both of which respondent discusses on appeal. However, respondent's notice of appeal states that respondent is appealing "the Order entered July 7, 2015 denying Respondent's motion to continue [the] hearing"; the notice of appeal makes no mention of the second, July 9, request for a continuance and its denial. "A notice of appeal confers jurisdiction on a court of review to consider only the judgments or parts of judgments specified in the notice of appeal." *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 176 (2011). While there is an exception for those orders that are a necessary step in the procedural progression leading to the judgment specified in the notice of appeal (*In re Marriage of O'Brien*, 2011 IL 109039, ¶ 23), in the case at bar, the July 9 denial of the continuance cannot be considered such a necessary step, since the July 7 order listed in the notice of appeal occurred prior to the July 9 one. Accordingly, we consider only the denial of respondent's July 7 request for a continuance.

¶ 29    The trial court has the discretion to grant or deny a motion for continuance, and its decision will not be disturbed on appeal unless it has resulted in a palpable injustice or

constituted an abuse of discretion. *K&K Iron Works, Inc. v. Marc Realty, LLC*, 2014 IL App (1st) 133688, ¶ 22. "An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Seymour v. Collins*, 2015 IL 118432, ¶ 41. When reviewing for abuse of discretion, the appellate court does not substitute its judgment for that of the trial court or determine whether the trial court acted wisely. *John Crane Inc. v. Admiral Insurance Co.*, 391 Ill. App. 3d 693, 700 (2009).

¶ 30        After a case has reached the trial stage, a party requesting a continuance must provide the court with " 'especially grave reasons' " for needing the continuance due to the potential for inconvenience to the witnesses, parties, and the court. *Marc Realty*, 2014 IL App (1st) 133688, ¶ 23; see also Ill. S. Ct. R. 231(f) (eff. Jan. 1, 1970) ("sufficient excuse" must be shown). Additionally, a party requesting a motion for continuance on account of an absence of material evidence must support the motion with an affidavit showing (1) that due diligence has been used to secure the evidence, (2) what facts the evidence consists of, (3) if in the form of testimony, the residence of the witness or, if unknown, that due diligence has been used to discover it, and (4) that the evidence can be obtained if more time is permitted. Ill. S. Ct. R. 231(a) (eff. Jan. 1, 1970). A decisive factor is whether the moving party has shown a lack of diligence in proceeding with the litigation. *In re Marriage of Ward*, 282 Ill. App. 3d 423, 431 (1996).

¶ 31        In the case at bar, respondent argues that the trial court abused its discretion when it denied his motion for continuance of the hearing on July 9, 2015. In response, petitioner argues that the trial court appropriately acted within its discretion when it denied respondent's motion for continuance. In support of her position, petitioner argues that

respondent had not shown due diligence throughout the course of litigation, specifically with regard to compliance with discovery rules. Furthermore, petitioner notes that the July 9 hearing date was set on May 29, 2015, meaning that respondent had plenty of time to adjust his schedule to accommodate the July 9 hearing date. In addition, respondent did not provide a written request or an affidavit to the court explaining a grave reason for needing a continuance.

¶ 32     We find petitioner's arguments to be persuasive. The trial court's discretionary decision to deny respondent's motion for continuance was justified by respondent's lack of due diligence displayed throughout the course of litigation. Such was the case in *Ward*, 282 Ill. App. 3d at 427-28, where the respondent in a dissolution of marriage case appealed the trial court's denial of a motion for continuance due to his attorney's illness, which was requested via telephone on the morning of a hearing date. The appellate court affirmed the denial of the motion in part because the respondent had been granted previous continuances and had also failed to appear at prior court dates, indicating a lack of due diligence during the proceedings in the case. *Ward*, 282 Ill. App. 3d at 432. The court concluded that "respondent's dilatory tactics and flagrant disregard of the court's orders delayed resolution of the dissolution case and taxed the court's patience." *Ward*, 282 Ill. App. 3d at 432.

¶ 33     We find that the circumstances in *Ward* align with the case at bar. Here, respondent repeatedly defied discovery requests from petitioner and orders from the court. In addition, as the trial court concluded, respondent's actions during the course of litigation diminished his credibility regarding his financial situation. Respondent failed to appear at any of the court dates prior to the entry of the permanent child support order in August 2013. His failure to appear at these hearings resulted in him defying several court orders requiring him to provide

proof of income in order to establish the appropriate amount of child support. After finally becoming involved in the case in August 2014, respondent failed to timely produce the financial disclosure form pursuant to Cook County Circuit Court Rule 13.3.1, which prompted petitioner to file a petition for rule to show cause against respondent in December 2014. When respondent finally produced his Rule 13.3.1 financial disclosure form in January 2015, it showed all zeroes regarding income. Respondent did produce an edited financial disclosure form in March 2015, which showed income but failed to list his bank accounts with Chase Bank and his business affiliation with TMT Sportz, both of which petitioner discovered upon her own investigation. After learning of this omitted information, petitioner filed a request for production to respondent in May 2015, requesting documents relating to his business interest in TMT Sportz. Respondent only complied with the second discovery request after petitioner issued a Supreme Court Rule 201(k) letter and subsequently filed a motion to compel discovery compliance.

¶ 34    Collectively, respondent's actions have, to use the words from the court in *Ward*, delayed resolution of petitioner's petition to modify child support and have taxed the trial court's patience. Petitioner had expressed her readiness to continue with the trial. In addition, the well-being of the child depended on a swift resolution of petitioner's petition to modify child support. Respondent's behavior unnecessarily delayed resolution of the appropriate amount of child support that the court determined that the child needed. Respondent's lack of due diligence as represented by the record thus supports the trial court's justification for using its discretion to deny the motion for continuance.

¶ 35    In addition, the absence of a written request or affidavit supporting respondent's motion for continuance further highlights respondent's lack of due diligence, especially since it is

required by Illinois Supreme Court Rule 231(a) (eff. Jan. 1, 1970). Moreover, the absence of a written request or affidavit also supports petitioner's argument that respondent did not provide a sufficient reason for needing a continuance, as required by Illinois Supreme Court Rule 231(f) (eff. Jan. 1, 1970). In *Ward*, in affirming the denial of the motion for continuance, the appellate court found that the respondent did not provide a sufficient reason for the continuance, relying on the fact that the respondent did not file a written motion for a continuance nor did he provide an affidavit concerning his counsel's illness. *Ward*, 282 Ill. App. 3d at 432. Similarly, in *In re Marriage of Betts*, 155 Ill. App. 3d 85, 95 (1987), the respondent father in an action for past due child support was appealing, *inter alia*, the trial court's denial of his orally requested continuance of a hearing that he had been ordered to appear at only a week beforehand. The appellate court affirmed the trial court's discretionary denial in part because "respondent could have presented a written motion for a continuance" prior to the hearing date. *Betts*, 155 Ill. App. 3d at 95. By contrast, in *Bethany Reformed Church of Lynwood v. Hager*, 68 Ill. App. 3d 509, 509-10 (1979), the defendant appealed the denial of a continuance because he was hospitalized. The appellate court reversed in part because the defendant had submitted valid affidavits explaining his illness, the identity of his physician, the hospital he was being treated at, and a time period that he would be hospitalized. *Bethany*, 68 Ill. App. 3d at 513.

¶ 36    The case at bar bears more resemblance to *Ward* and *Betts* than it does to *Bethany*. Similarly to *Ward*, respondent did not file a written motion for continuance, nor did he provide a supporting affidavit. Instead, respondent's counsel orally requested a motion for continuance at both the status hearing on July 7 and the actual hearing on July 9. However, the record shows that respondent's counsel did not provide any reason for respondent's

unavailability. Based on the information available in the record, it appears that respondent requested the continuance solely on the basis of his ambiguous "unavailability." It is important to keep in mind that the hearing on petitioner's petition to modify support had already begun and respondent was fully aware that he was required to complete his testimony during the July 9 hearing. As previously mentioned, a motion for continuance after trial has begun must be supported by a grave reason due to the potential for inconvenience to the witnesses, the parties, and the court. *Marc Realty*, 2014 IL App (1st) 133688, ¶ 23. Since respondent failed to communicate a grave reason, or any reason at all, for needing a continuance after trial had started, the trial court appropriately acted within its discretion when denying respondent's motion for continuance.

¶ 37   We find respondent's arguments to the contrary to be unpersuasive. In support of this appeal, respondent argues that he showed a significant excuse for his unavailability and that there was little inconvenience to the witnesses or the court to continue one day of trial. Respondent also argues that, should his excuse not be deemed sufficient, the ends of justice necessitated the granting of the continuance.

¶ 38   At the forefront, we note that respondent's argument that he provided a significant excuse for the motion for continuance is not factually supported by the record. Respondent asserts that his counsel explained to the court that he was out of state when the oral motion for continuance was made. However, the record shows that respondent's counsel only offered this explanation when she orally requested the court to allow respondent to testify via telephone. In fact, the agreed statement of facts shows that when respondent's first motion for continuance was requested during the July 7 trial status hearing, respondent "did not disclose or explain his sudden unavailability." Thus, contrary to his argument on appeal, the

record shows that respondent only provided an explanation for his absence for the purpose of requesting telephone testimony and not for the motion for continuance.

¶ 39     However, even assuming *arguendo* that respondent did explain to the court that he was out of state when he requested the continuance, we cannot say that his explanation would qualify as a "grave reason" for needing a continuance. Respondent offers no case law supporting the notion that simply being out of state on the day of trial is a "grave reason." Instead, respondent attempts to contrast the facts of the case at bar from those present in *Marc Realty*, 2014 IL App (1st) 133688 ¶¶ 18-20, where the moving party requested a motion for continuance in order to secure new counsel because it had terminated its counsel on the day of trial due to an "inherent conflict." In that case, the appellate court affirmed the trial court's denial of the motion for continuance, agreeing with the trial court that granting the continuance would inconvenience the other parties in the litigation. *Marc Realty*, 2014 IL App (1st) 133688, ¶ 27. By contrast to *Marc Realty*, respondent argues that his motion for continuance would not inconvenience the court or petitioner because there were no outside witnesses and both parties lived in Illinois. However, respondent's argument does nothing to show that his explanation for his unavailability was a grave reason. Rather, respondent seems to assert that since there was little potential for inconvenience in granting his continuance, his explanation suffices as a grave reason. There is no logic in this assertion. Furthermore, the assertion that the continuance would not inconvenience petitioner is not supported by the circumstances of the case. Child support was the central issue at the July 9 hearing. Petitioner and, more importantly, the child would certainly be inconvenienced by having to wait to resolve this issue, because this money goes toward supporting the child and resolution of this issue had already been prolonged by respondent's noncompliance with discovery.

¶ 40    Moreover, respondent ignores that the court in *Marc Realty* also explained it upheld the trial court's denial of the continuance in part because the explanation that the moving party terminated its counsel due to an "inherent conflict" was only supported by a vague factual reference and did not amount to a sufficiently grave reason. *Marc Realty*, 2014 IL App (1st) 133688, ¶ 24. This is similar to the case at bar, where respondent requested a continuance but did not explain his unavailability or at what point he would be available to continue trial. This is amplified by the fact that respondent did not submit a written motion or a supporting affidavit. There is no way that we can conclude that respondent offered a sufficiently grave reason for needing a continuance after trial had already begun.

¶ 41    In addition, respondent argues that if being out of state was not a sufficiently grave reason, the ends of justice required his continuance to be granted. Respondent supports this notion by pointing out that the issue of child support could not be adequately decided without him, that he was unable to clarify evidence submitted against him, and that he was unable to hear and respond to petitioner's testimony. Respondent is undoubtedly correct in asserting that his testimony was important to the issue of child support. Such was the case in *Lindeen v. Illinois State Police Merit Board*, 25 Ill. 2d 349, 350 (1962), where the plaintiff submitted a motion for continuance because he was unable to locate his essential witness, despite issuing a subpoena to compel the witness to appear for the trial date. Our supreme court reversed the denial of this motion, explaining that the plaintiff had exercised due diligence in trying to procure the witness and that under these circumstances, justice demanded that he be given more time to procure his essential witness. *Lindeen*, 25 Ill. 2d at 352. Similarly, in *Vollentine v. Christoff*, 24 Ill. App. 3d 92, 93 (1974), the plaintiffs requested a continuance because the trial date had been moved and their indispensable witness, a doctor, was not

available for the new trial date. The appellate court reversed the denial of the motion, explaining that the unavailability of the witness was no fault of the plaintiffs and that the ends of justice required that plaintiffs have time to procure this essential witness. *Vollentine*, 24 Ill. App. 3d at 96.

¶ 42     From the case law, it appears that the ends of justice demand the granting of a continuance to procure an essential witness in circumstances where the witness is unavailable through no fault of the moving party and the moving party had exercised due diligence in procuring the witness. However, this was not the situation in the case at bar. Respondent was the essential witness, but he did not put forth any evidence to show that his unavailability was sudden or that he had exercised due diligence to ensure that he could attend the July 9 hearing date. The record does not show that he attempted to change his schedule or that he absolutely needed to be out of state during the July 9 hearing date. In fact, in his reply to petitioner's response to his motion to reopen proofs, respondent affirmatively stated that "[h]ad the importance of his presence on [July 9] been adequately explained to him by his prior counsel, he would have been present in court." Thus, respondent's own statement shows that he could have been present in court had he wished. Furthermore, the record also indicates that the hearing date was set on May 29, meaning that respondent had plenty of time to exhibit due diligence in attending the hearing. The absence of any due diligence or explanation of his unavailability supports the trial court's discretionary decision to deny respondent's motion for a continuance, and we affirm the trial court's decision on this issue.

¶ 43                              II. Motion to Reopen Proofs

¶ 44     Respondent next argues that the trial court erred in denying his motion to reopen proofs, which he filed after the trial court granted petitioner's petition to modify child support. "In

ruling on a motion to reopen proofs, the trial court considers: whether the moving party has provided a reasonable excuse for failing to submit the additional evidence during trial, whether granting the motion would result in surprise or unfair prejudice to the opposing party, and if the evidence is of the utmost importance to the movant's case." (Internal quotation marks omitted.) *In re Estate of Bennoon*, 2014 IL App (1st) 122224, ¶ 55. Additionally, when a case is tried before the court without a jury, "greater liberty should be allowed in reopening proofs." *Bennoon*, 2014 IL App (1st) 122224, ¶ 55. Nevertheless, the fact that a case is heard without a jury does not mean that a motion to reopen proofs should automatically be granted. See *Bennoon*, 2014 IL App (1st) 122224, ¶ 56 (affirming the denial of a motion to reopen proofs despite the fact that there was no jury and the motion to reopen proofs was brought before the trial court rendered its decision). An order denying a motion to reopen proofs is reviewed for an abuse of discretion. *Bennoon*, 2014 IL App (1st) 122224, ¶ 53. As noted, "[a]n abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Seymour*, 2015 IL 118432, ¶ 41.

¶ 45    In the case at bar, we cannot find that the trial court abused its discretion in denying respondent's motion to reopen proofs. Respondent claims that he had a reasonable excuse for failing to present "proof of his income,"[13] namely, the fact that he was not present at the hearing on July 9. However, respondent's argument presupposes that his absence from the hearing was "reasonable" and that it was the trial court that made the error in refusing to continue the hearing until respondent could be present. As we have thoroughly discussed above, however, the trial court properly refused to grant respondent's continuance because

---

[13]As petitioner points out, respondent never specifies what evidence he would provide, other than his own testimony. Instead, respondent focuses on his argument that petitioner failed to sustain her burden of proving respondent's income. We consider that argument in the next section of our analysis.

respondent's excuse for being absent from the hearing, which he did not even provide to the trial court at the time he requested the continuance, was not sufficiently grave. Moreover, as noted, respondent himself admitted that he could have been present at the July 9 hearing had he chosen to be. Thus, as the *Bennoon* court noted, respondent's failure to present his evidence "was not because of inadvertence but was a calculated risk on [his] part." *Bennoon*, 2014 IL App (1st) 122224, ¶ 61. That risk—that respondent could miss the hearing date with no repercussions—backfired, and we cannot find that respondent's absence from the July 9 hearing date is a reasonable excuse for his failure to present the evidence concerning his income that he now wishes to present.

¶ 46    We also do not find persuasive respondent's contention that there would have been no surprise or unfair prejudice to petitioner in reopening the case. As in our discussion of prejudice concerning the motion for a continuance, reopening the proofs would have prolonged the case and would have delayed petitioner's receipt of child support, which is necessary for providing for the child's needs. See *Bennoon*, 2014 IL App (1st) 122224, ¶ 65 (finding prejudice where "allowing the reopening of proofs in this case would further delay the closing and final distribution of an estate which was opened in 2008").

¶ 47    Respondent also argues that "the evidence that [he] sought to introduce as part of his motion to reopen proofs was of the utmost importance to [his] case and would likely have materially altered the trial court's judgment." However, respondent does not specify what evidence he would have introduced, other than his own testimony. Furthermore, respondent does not explain what his testimony would have been, meaning that we have no way of knowing whether it would have been "of the utmost importance to [his] case," especially since the trial court made numerous findings of fact concerning respondent's lack of

credibility. See *People v. Collier*, 329 Ill. App. 3d 744, 753 (2002) ("[I]n order for the trial court to have found that defendant's testimony was of such importance to warrant the reopening of his case, an offer of proof should have been presented before the court ruled on his request or immediately thereafter. Given the lack of insight as to the character of his testimony and reasons for failing to present it during his case in chief, we cannot say that the trial court clearly abused its discretion when denying defendant's motion to reopen his case."); *Dunahee v. Chenoa Welding & Fabrication, Inc.*, 273 Ill. App. 3d 201, 211 (1995) (using the plaintiff's offer of proof of witness testimony as to a critical date in finding that the new evidence was "of the utmost importance to plaintiff's case" and concluding that the trial court should have reopened proofs). Whatever evidence respondent seeks to provide also would have been available at the time of the July 9 hearing, a fact that also distinguishes respondent's case from the situations present in *In re Marriage of Suarez*, 148 Ill. App. 3d 849 (1986), and *Wife F. v. Husband F.*, 358 A.2d 714 (Del. 1976), a case on which *Suarez* relied; both of those cases concerned evidence of a posthearing change in value of assets that necessitated reopening the proofs.

¶ 48    Finally, we find unpersuasive respondent's various assertions concerning the reasons for the trial court's denial of his motion. First, while the trial court did reference a motion to reconsider in beginning its remarks on the motion to reopen proofs, there is no indication that it applied the incorrect standard in considering respondent's motion, as it expressly stated that it understood the type of motion it was denying. It is also clear that the fact that respondent did not attend the July 9 hearing weighed heavily in the trial court's analysis, a fact that bears directly on a motion to reopen proofs and the reasonableness of respondent's excuse for not presenting his evidence at the hearing. Respondent also argues that the trial

court's negative view of respondent's credibility did not justify the denial of his motion to reopen proofs. However, given that the only evidence respondent has suggested he would provide if the case were reopened would be his own testimony, the trial court's view of respondent's credibility would be highly relevant in determining whether the additional evidence would be useful. Accordingly, we cannot find that the trial court abused its discretion in denying respondent's motion to reopen proofs.

¶ 49                    III. Child Support Award

¶ 50    Next, respondent makes two arguments concerning the child support award itself. First, respondent argues that the trial court erred when it set the amount of child support at $3000 per month. Additionally, respondent argues that the trial court erred in ordering the support award to be retroactive to September 1, 2013. We consider each argument in turn.

¶ 51                    A. Amount of Child Support

¶ 52    Respondent first argues that the trial court erred in setting the amount of child support at $3000 per month. "A trial court enjoys broad discretion in determining the modification of child support, and we will not overturn its decision unless there is an abuse of discretion." *McClure v. Haisha*, 2016 IL App (2d) 150291, ¶ 20; *In re Marriage of Rogers*, 213 Ill. 2d 129, 135 (2004). As noted, "[a]n abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, or unreasonable, or when its ruling rests on an error of law." *McClure*, 2016 IL App (2d) 150291, ¶ 20.

¶ 53    In the case at bar, respondent argues that petitioner failed to demonstrate that she was entitled to an increase in child support to $3000 per month. A child support judgment can generally be modified only upon a showing of a substantial change in circumstances. *In re Marriage of Sweet*, 316 Ill. App. 3d 101, 105 (2000); see 750 ILCS 5/510(a) (West 2014).

"The party seeking the modification must show both a change in the children's needs and in the noncustodial parent's ability to pay." *Sweet*, 316 Ill. App. 3d at 105. Respondent claims that petitioner failed to show either that the child's needs had increased or that respondent's income had increased. We do not find this argument persuasive.

¶ 54       With respect to the child's needs, respondent argues that petitioner "did not testify to the child's needs other than to state that the needs were $3,000 per month" and points to her Rule 13.3.1 disclosure as providing evidence "that the child's stated needs were significantly less." Respondent's argument concerning the Rule 13.3.1 disclosure is unsupported by the record on appeal. While respondent is correct that petitioner's disclosure form lists expenses that were spent exclusively on the child as $1497 as of the November 30, 2014, date of the disclosure, respondent's argument ignores the fact that the disclosure also includes $1980 in household expenses and $585 in transportation expenses. Child support is intended to "provide for the reasonable and necessary educational, physical, mental and emotional health needs of the child." 750 ILCS 5/505(a) (West 2014). A child is not expected to live without a roof over his head or with no way to travel from place to place. Thus, even based on the disclosure alone, the expenses eligible for child support would include more than the $1497 asserted by respondent.

¶ 55       Moreover, as to respondent's criticism of the content of petitioner's testimony concerning the child's needs, the record does not contain a transcript of the July 9, 2015, hearing at which petitioner testified, nor does it include a bystander's report. All that is included is an agreed statement of facts, which is silent concerning petitioner's testimony as to the child's

needs.[14] As the appellant, respondent had the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and any doubts that arise from the incompleteness of the record will be resolved against him. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Furthermore, at the October 14, 2015, court date at which the trial court denied respondent's motion to reopen proofs, the court noted that it found petitioner's testimony from the July 9 hearing—that she needed $3000 per month to cover the child's expenses—credible and reasonable. In addition, petitioner testified that respondent was voluntarily paying $3500 per month in child support until 2011, after which he paid less until respondent unilaterally stopped making the payments.[15] "A reviewing court will not substitute its judgment for that of the trial court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn" from the evidence. *Best v. Best*, 223 Ill. 2d 342, 350-51 (2006); *In re Marriage of McHenry*, 292 Ill. App. 3d 634, 641 (1997). Since the trial court found petitioner's testimony that the child's needs were $3000 per month to be credible and reasonable, we will not reweigh that credibility determination on appeal. Finally, we note that "an increase in children's needs can be presumed on the basis that they have grown older and the cost of living has risen." *Sweet*, 316 Ill. App. 3d at 105. Thus, we cannot agree with respondent's contention that petitioner failed to show that the child's needs had increased.

¶ 56       We are similarly unpersuaded by respondent's argument that petitioner failed to show that respondent's income had increased. Respondent argues that the record was devoid of any competent evidence of his income, so the trial court erred in setting child support at $3000

---

[14]We note that the agreed statement of facts indicates that both parties made arguments concerning petitioner's testimony about the child's needs during closing argument, but there is nothing indicating what that testimony actually was.

[15]Petitioner testified that respondent paid a total of $4095.10 in child support from October 2013 through April 2015.

per month. Section 505(a) of the Marriage Act creates a rebuttable presumption that a specified percentage of a noncustodial parent's income represents an appropriate child support award. *In re Marriage of Freesen*, 275 Ill. App. 3d 97, 105 (1995). If the trial court deviates from the statutory guidelines in awarding child support, it must make express findings as to its reasons for doing so. *In re Marriage of Severino*, 298 Ill. App. 3d 224, 230-31 (1998). "[C]onsideration of the factors set forth in section 505 of the Act is mandatory, not directory," when deciding whether to deviate from the guidelines. *Freesen*, 275 Ill. App. 3d at 105.

¶ 57    "Under normal circumstances, the trial court is required to make a threshold determination of the party's net income before applying section 505." *Severino*, 298 Ill. App. 3d at 230. "In section 505(a)(5) of the [Marriage] Act, however, the legislature recognized that there may arise situations where the amount of the noncustodial parent's net income could not be accurately determined." *In re Marriage of Takata*, 304 Ill. App. 3d 85, 96 (1999). Section 505(a)(5) of the Marriage Act provides that, "[i]f the net income cannot be determined because of default or any other reason, the court shall order support in an amount considered reasonable in the particular case." 750 ILCS 5/505(a)(5) (West 2014). Thus, in cases where there is no credible evidence of net income, a court "[is] compelled to make the award of child support in an amount that [is] reasonable in the case." *Takata*, 304 Ill. App. 3d at 96. Such situations commonly occur in cases in which the party's testimony concerning his or her income is considered not credible by the trial court. See, *e.g.*, *In re Marriage of Sanfratello*, 393 Ill. App. 3d 641 (2009) (noting that the trial court acted reasonably in drawing the inference that the respondent earned substantially more than he claimed); *Sweet*, 316 Ill. App. 3d at 109 (noting that "the court strongly implied that respondent was not being

truthful about his income"); *Takata*, 304 Ill. App. 3d at 96 (noting that the trial court found the party's testimony as to his income to be not credible); *Severino*, 298 Ill. App. 3d at 229-30 (same).

¶ 58     In the case at bar, we cannot find that the trial court abused its discretion when it found that it could not determine respondent's income and consequently used section 505(a)(5) to award child support in an amount it considered reasonable, which was based on the child's needs. First, the trial court expressly stated several times that it did not find respondent's testimony credible, a decision that we will not reweigh on appeal. See *Best*, 223 Ill. 2d at 350-51. Additionally, the trial court drew a negative inference from respondent's failure to appear on the second day of the hearing. While respondent argues that this inference was improper, we find no error with the trial court's actions. "Where a party fails to produce evidence in his control, the presumption arises that the evidence would be adverse to that party." *REO Movers, Inc. v. Industrial Comm'n*, 226 Ill. App. 3d 216, 223 (1992). Respondent argues that such a presumption should not apply here, where he had a reasonable excuse for not presenting his testimony, namely, his absence from the state. However, as noted several times herein, the trial court properly found that respondent's absence was not reasonable, and we find no error in the trial court's choosing to apply the presumption in this case.

¶ 59     Finally, there were records concerning respondent's involvement with TMT Sportz as well as several of respondent's personal bank statements admitted into evidence, which showed that respondent had not been forthright about his income. Respondent argues that the bank statements should not have been admitted into evidence because they were hearsay and there was no foundation laid for their admission. Again, the only record of the hearing at

which these documents were admitted into evidence was the agreed statement of facts, which states: "[respondent's attorney] objected to [petitioner's attorney's] offer of documentary evidence since there was no person who could verify the documents. Judge Kaplan denied [respondent's attorney's] objection and indicated that the documents could be admitted over [her] objection." It is thus unclear the basis under which petitioner's counsel sought to have the documents admitted or whether a proper foundation had been laid. Again, to the extent that the record is not sufficient to support a claim of error, "it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch*, 99 Ill. 2d at 391-92. However, even though it is not mentioned by the parties on appeal, we do note that the bank statements do appear to have been admissible under section 505(a)(6) of the Marriage Act, which provides:

> "If (i) the non-custodial parent was properly served with a request for discovery of financial information relating to the non-custodial parent's ability to provide child support, (ii) the non-custodial parent failed to comply with the request, despite having been ordered to do so by the court, and (iii) the non-custodial parent is not present at the hearing to determine support despite having received proper notice, then any relevant financial information concerning the non-custodial parent's ability to provide child support that was obtained pursuant to subpoena and proper notice shall be admitted into evidence without the need to establish any further foundation for its admission." 750 ILCS 5/505(a)(6) (West 2014).

In the case at bar, concerning the bank statements from Chase bank, the record reveals: (1) petitioner served respondent with a request for production of documents on May 15, 2015, which included a request for bank statements for any checking or savings accounts in

31

respondent's name; (2) after receiving no documents in response to the request, petitioner filed a motion to compel discovery compliance with the request to produce on June 24, 2015, and the court ordered respondent to comply with the request to produce; (3) while the court "acknowledge[d] [respondent's] production of Responses to Petitioner's 2nd Request for Production of Documents," petitioner's counsel stated at the hearing on the motion to reopen proofs that petitioner did not receive any documents concerning respondent's Chase bank accounts; (4) as a result of her own investigation, petitioner issued a subpoena to Chase Bank, in response to which the bank produced respondent's bank statements; and (5) respondent was not present at the July 9 hearing date, at which child support was at issue. Thus, according to the plain language of section 505(a)(6), the bank statements appear to have been admissible without any further foundation, and the trial court did not err in admitting them.

¶ 60          In summary, when determining respondent's income, the trial court was presented with (1) respondent's incredible testimony on the first hearing date, (2) respondent's complete absence from the second hearing date, and (3) bank statements that indicated that there was money flowing through respondent's bank accounts that had not been disclosed. Accordingly, we cannot find that the trial court abused its discretion when it determined that it could not accurately determine respondent's actual income from the evidence before it and therefore needed to apply section 505(a)(5) to award what it considered reasonable child support, which was based on the child's needs, which amounted to $3000 per month. In addition, the fact that the trial court found that respondent had more income than he claimed was a factor that the court considered in making this determination.

¶ 61                                   B. Retroactivity of Support

¶ 62          Respondent also claims that the trial court erred in ordering the modified support award

to be retroactive to September 1, 2013, in light of the fact that petitioner's petition to modify

support was filed on October 9, 2014. Respondent argues that this issue should be reviewed

*de novo*, while petitioner claims it should be reviewed under an abuse of discretion standard.

However, we have no need to resolve this dispute because, even applying the more

deferential standard of review, we would still conclude that the trial court erred in ordering

the support award to be retroactive to September 1, 2013.

¶ 63          Under section 510(a) of the Marriage Act, "the provisions of any judgment respecting

maintenance or support may be modified only as to installments accruing subsequent to due

notice by the moving party of the filing of the motion for modification." 750 ILCS 5/510(a)

(West 2014). Thus, under the plain language of the statute, the filing of the motion for

modification is the earliest date to which the modification applies. See *In re Marriage of

Pettifer*, 304 Ill. App. 3d 326, 328 (1999) ("A plain reading of section 510(a) dictates that a

retroactive modification is limited to only those installments that date back to the filing date

of the petition for modification and, thus, insures that the respondent is put on notice prior to

the court ordering him to pay increased support."); *In re Marriage of Henry*, 156 Ill. 2d 541,

544 (1993) ("Dissolution of marriage and collateral matters such as child support are entirely

statutory in origin and nature [citation], and, in light of the legislature's clear pronouncement

*** [in section 510(a)], a trial court has no authority to retroactively modify a child support

order ***.").

¶ 64          In the case at bar, petitioner's petition for modification of child support was filed on

October 9, 2014. Accordingly, the trial court only had the discretion to modify child support

as to installments accruing after that date and, consequently, erred in ordering child support to be retroactive to September 1, 2013. Therefore, we vacate that portion of the custody judgment ordering the increased amount of child support from September 1, 2013, to October 9, 2014.

¶ 65        In arguing that the trial court had the discretion to order retroactive support, petitioner cites *In re Marriage of Erickson*, 136 Ill. App. 3d 907 (1985), and *In re Parentage of Janssen*, 292 Ill. App. 3d 219 (1997). However, *Erickson* is unpersuasive because it involved the termination and modification of maintenance and child support, respectively, after the remarriage of the custodial parent. Similarly, *Janssen* is inapposite because it concerned ordering retroactive support pursuant to the Parentage Act back to the date of the child's birth. While petitioner in the case at bar did bring a parentage action, the support sought in this case is not an initial support order but is a modified one. Under section 16 of the Parentage Act, "[a]ny support judgment is subject to modification or termination only in accordance with Section 510 of the Illinois Marriage and Dissolution of Marriage Act." 750 ILCS 45/16 (West 2014). Thus, section 510(a) of the Marriage Act applies, and its plain language provides the limitation of the support order.

¶ 66        Finally, we find unpersuasive petitioner's arguments that respondent had notice that she was seeking retroactive support because in 2013, there were temporary and permanent support orders referencing retroactive child support. However, the two orders referenced by petitioner reserved the issue of retroactive child support from January 1, 2011, through March 31, 2013. These orders lend no support to the claim that respondent was on notice that petitioner would be seeking retroactive support from September 1, 2013, and, indeed, child support from January 2011 through March 2013 does not appear to have been at issue during

the hearing. Accordingly, as set forth above, we vacate the portion of the custody judgment ordering the increased amount of child support from September 1, 2013, to October 9, 2014.

¶ 67                                    IV. Health Insurance

¶ 68        Finally, respondent claims that the trial court erred in requiring him to provide health insurance for the child because petitioner already had health insurance for the child at no cost to her. "It is within the trial court's sound discretion to order the payment of a health insurance premium, and the trial court's ruling will not be disturbed on review absent an abuse of discretion." *In re Marriage of Raad*, 301 Ill. App. 3d 683, 688 (1998). As noted, "[a]n abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Seymour*, 2015 IL 118432, ¶ 41.

¶ 69        In the case at bar, in the custody judgment, the trial court ordered respondent to "acquire and maintain health insurance for the minor child." In its comments in open court, the court also noted that, "[h]e can go get a policy and pay for it or he can reimburse mom if she does have a policy. *** That is his obligation." Under section 505.2 of the Marriage Act:

>        "(1) Whenever the court establishes, modifies or enforces an order for child support or for child support and maintenance the court shall include in the order a provision for the health care coverage of the child which shall, upon request of the obligee or Public Office, require that any child covered by the order be named as a beneficiary of any health insurance plan that is available to the obligor through an employer or labor union or trade union. If the court finds that such a plan is not available to the obligor, or that the plan is not accessible to the obligee, the court may, upon request of the obligee or Public Office, order the obligor to name the child

covered by the order as a beneficiary of any health insurance plan that is available to the obligor on a group basis, or as a beneficiary of an independent health insurance plan to be obtained by the obligor, after considering the following factors:

> (A) the medical needs of the child;

> (B) the availability of a plan to meet those needs; and

> (C) the cost of such a plan to the obligor." 750 ILCS 5/505.2(b)(1) (West 2014).

¶ 70    Respondent's argument appears to be that the trial court abused its discretion in ordering him to obtain health insurance because petitioner already had an insurance plan and respondent was unemployed. As to respondent's claims about his income, those have already been exhaustively discussed above, and we have no need to further discuss them here. Additionally, "[t]he duty to provide health insurance is an integral part of a parent's current and future support obligations." *In re Marriage of Seitzinger*, 333 Ill. App. 3d 103, 113 (2002). Respondent cites no authority that would relieve one parent from a health insurance obligation simply because the other parent already has a policy. Indeed, section 505.2(d) provides that "[t]he dollar amount of the premiums for court-ordered health insurance *** shall be considered an additional child support obligation owed by the obligor." 750 ILCS 5/505.2(d) (West 2014). This makes clear that health insurance is respondent's child support obligation, regardless of petitioner's situation. See *Takata*, 304 Ill. App. 3d at 95 (finding the respondent liable for unpaid health insurance premiums despite the fact that the petitioner insured her children through public aid at no cost to her). We cannot find that the trial court abused its discretion in ordering respondent to obtain health insurance for the child.

¶ 71                                                    CONCLUSION

¶ 72          For the reasons set forth above, we find (1) the trial court did not err in denying respondent's motion for a continuance, (2) the trial court did not err in denying respondent's motion to reopen proofs, (3) the trial court did not err in setting child support at $3000 per month, and (4) the trial court did not err in ordering respondent to obtain health insurance for the child. However, we vacate that portion of the custody judgment ordering the increased amount of child support from September 1, 2013, to October 9, 2014, as the trial court could only order increased support retroactive to the date of the filing of the petition for modification.

¶ 73          Affirmed in part; vacated in part.